UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Cedrone, LLC d/b/a Shawsheen Firearms, et. al.,  Plaintiffs | ) ) ) ) |
| v. | ) Civil Action No.: 4:20-cv-40041 ) |
| Charles Duane Baker, Jr., in his Capacity as Governor of the Commonwealth of Massachusetts, et. al.,  Defendants | ) ) ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR EX-PARTE TRO

### I.    UNDISPUTED FACTS

1.    On March 23rd, Governor closed all "non-essential" businesses until at least May 4th, 2020.

2.    Plaintiffs are either among the class of businesses which have been ordered closed or have been denied their Second Amendment, Article XVII and due process rights.

3.    The Department of Homeland Security ("DHS"), on March 28th, issued a "Memorandum on Identification of Essential Critical Infrastructure Workers During Covid-19 Response."

4.    In that memorandum, firearms retailers and shooting ranges were listed as "essential."

5.    On April 1st, Governor promulgated regulations which were in line with those promulgated by the DHS, permitting firearm's retailers and shooting ranges to reopen.  Exhibit A.

6.    Governor then reversed himself, and shuttered all firearm's retailers and shooting ranges.

7.    Between these two events, AG, tweeted that gun shops and shooting ranges are not essential. Exhibit B.

8.    Each of the Plaintiffs, aside from GOA, who is advancing a claim on behalf of its' members and supporters, holds either a Federal Firearms License ("FFL"), and/or relevant State License which permits them to sell firearms and ammunition or otherwise operate a shooting range, or a State issued Firearms License which permits them to purchase and possess firearms and ammunition.

9.    DHS has clearly labelled firearm's retailers and shooting ranges as "critical infrastructure."

10. Despite this, Governor has ordered the Plaintiff businesses to close their doors for the indefinite future, as May 4th, 2020 is merely a possible date of reopening.

11. This has resulted in GOA's members and supporters, Michael and Doris being deprived of their Constitutional right to purchase, possess and train with firearms and ammunition.

12. Governor also announced that those in the firearms industry are "ineligible" for any sort of emergency funds or loans which would permit them to survive an extended shut down.

13. This leaves the Plaintiff businesses in an extremely precarious situation, as their livelihoods are being threatened.  They are properly licensed to operate, are labelled essential services by the Federal Government, but are still being forced to close by Governor.

14. Furthermore, GOA's members and supporters, Michael and Doris, are incapable of exercising their Second Amendment and Article XVII rights, as Governor has precluded them from being able to obtain firearms and ammunitions, or train, during this time.

15. All Plaintiffs have been deprived of their property rights in their licenses, without due process under the law.

## II.     DISPUTED FACTS

1. Governor has no valid reason for closing firearms retailers and shooting ranges.

2. Governor is pursuing this course of action to further an ideological agenda, to please AG and advance her ideological claims, not out of a legitimate response to the Covid-19 crisis.

3. Plaintiffs are entitled to injunctive relief to prevent further irreparable harm.

## III.     ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 65(b)(1) allows for issuance of an Ex-Parte Temporary Restraining Order when, "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse

party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). *Granny Goose Foods, Inc., et al., v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County, etc.,* 415 U.S. 423, 94 S.Ct. 1113 (1974).

The pleading requirements for a TRO also require the moving party meet four requirements. "In evaluating a motion for a temporary restraining order, the Court considers the same four factors that apply to a motion for preliminary injunction, that is: the likelihood the movant will succeed on the merits, whether the movant is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities, and whether an injunction is in the public interest." *Adams v. Wells Fargo Bank, N.A.,* 221 F.Supp.3d 171, 177-178 (D.MA 2016) citing *Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011). When these standards are applied to Plaintiffs' motion for a TRO, it becomes clear issuance is proper.

**B.  Plaintiffs Have Shown A Likelihood of Success on the Merits**

Plaintiff businesses have satisfied the burden for an ex-parte TRO, by showing, via their affidavits, and their previously filed Complaint for Declaratory and Injunctive Relief that, they are currently suffering irreparable harm by being closed, and that should they remain closed for even a brief period, the irreparable harm they are suffering will increase in magnitude, culminating with closing forever. This cannot be avoided as Governor has announced that they are ineligible to receive emergency funds from the Commonwealth, and they cannot reopen. This has put the Plaintiff businesses in an impossible situation which has resulted in irreparable harm, and will result in their closure and bankruptcy if they are not permitted to reopen forthwith. Additionally, GOA's members and supporters, Michael, and Doris have been, and continue to be, denied their Second Amendment, Article XVII and due process rights, as Governor has completely banned the commercial sale of firearms inside Massachusetts.

3

Furthermore, in the accompanying affidavit, Attorney for Plaintiffs has certified in writing that he attempted to give notice of his intent to file this action to Governor via certified letter on April 2nd, which was received by him on April 6th, but received no response. Furthermore, Governor has received notice of the action pending against him, and this is evidenced by his statements during a press conference given on April 10th. A reporter present asked Governor about the lawsuits and Governor acknowledged them, stated that he felt he had taken the right course of action, and declined to comment further. As Governor has received notice, is clearly not willing to discuss this matter or even consider reversing his position, and all Plaintiffs have suffered irreparable injuries, which will only grow in magnitude, notice should not be required, and the order should issue forthwith.

Plaintiffs are also entitled to relief, in that they have satisfied the first requirement outlined in *Adams v. Wells Fargo Bank, N.A.,* 221 F.Supp.3d 171, 177 (D.MA 2016). "In order to satisfy the first factor, i.e., a likelihood of success on the merits, Plaintiffs must establish that they are likely to prevail on one or more of their claims." *McKenzie v. Option One Mortgage,* 321 F.Supp.3d 186, 188 (D.MA 2018). Here, Plaintiffs are likely to prevail on at least one of their claims, and so issuance of the TRO is appropriate.

Here, Plaintiffs have filed suit, but are not seeking complicated relief; they seek only to maintain the status quo as it existed before Governor issued his order, and thus this requirement is easily satisfied. "To establish a likelihood of success on the merits, the district court must only determine the 'probable outcomes.' *AngioDynamics, Inc. v. Biolitec AG,* 910 F.Supp.2d 346, 352 (D.MA 2012) citing *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 238 (1st Cir.1986). Plaintiffs filed a five count Complaint, alleging deprivation of rights under the color of office, violation of the Second Amendment of the U.S. Constitution, violation of the Article XVII of the Massachusetts Declaration of rights, and deprivation of Due Process rights. While

4

Plaintiffs need only show a likelihood of success on one of their claims, they can show a likelihood of success on all claims, and so issuance of a TRO is appropriate.

Plaintiffs are likely to succeed on their claim for violation of 42 U.S.C. § 1983, as they are able to demonstrate that Governor & AG, acting under color of their office, conspired to deprive Plaintiffs of their rights and privileges guaranteed under the Constitution. Specifically, Governor & AG conspired to deprive Plaintiffs of their Second Amendment and Due Process rights, by ordering that all gun stores and shooting ranges close, and remain closed. In so doing, they have effectively precluded Plaintiffs, and most if not all, citizens of Massachusetts from obtaining firearms for defense of hearth and home. Such deprivation is clearly arbitrary and capricious in nature, in that DHS has declared gun stores and shooting ranges to be essential, Governor did publish regulations which mirrored the DHS guidelines but suddenly and without warning changed them. Such change occurred only after AG tweeted her displeasure with Governor's decision, and he quickly bowed to AG's displeasure. As Governor's decision to shutter all gun stores and shooting ranges has no legitimate basis, was done only to mollify AG and further her personal agenda, as further evidenced by these businesses having been declared ineligible for emergency relief funds, the actions of Governor and AG violate 42 U.S.C. § 1983, Plaintiffs are likely to prevail on this claim, and issuance of the TRO is proper.

The reason for which Plaintiffs are likely to succeed on their 42 U.S.C. § 1983 claim is that, "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga University v. Doe,* 536 U.S. 273, 284, 122 S.Ct. 2268, 2276 (2002). Here, in the complaint which was filed, Plaintiffs have demonstrated that the Second and Fourteenth Amendments, preserve and confer rights upon them. These rights are the right to keep and bear arms, the right to train with them, property rights in their respective licenses, and the right to due process before being deprived of them. Defendants' actions have trampled these rights, which were conferred by statute, and are presumptively enforceable by § 1983. Given that

5

defendants' actions are clearly motivated by political, and not legitimate, concerns, Plaintiffs are likely to succeed on this claim and injunctive relief is warranted.

Plaintiffs are likely to succeed on their claim for violation of the Second Amendment, as the case law clearly shows that Plaintiffs are guaranteed certain rights by the Second Amendment, and the defendants have denied all Plaintiffs, and those similarly situated but not named, those rights. Insofar as Governor has ordered that all gun stores and shooting ranged be closed, such order violates the Second Amendment which states: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. Amend. II. Governor, by issuing his shut-down order, has substantially infringed, if not completely deprived, Plaintiffs of their Second Amendment Rights. His order requires that all gun stores and shooting ranges be closed, and to remain closed for what is likely to be an indefinite period. In so doing, Governor is violating the rights of all Plaintiffs, and every citizen of Massachusetts, who wish to procure firearms or ammunition, or to train with the same.

This order is not a small burden which can be ignored as a mere inconvenience. It does not require those wishing to exercise their rights comply with added safety measures such as social distancing. It essentially strips Plaintiffs, and all citizens in the Commonwealth, of their right to acquire firearms for lawful purposes, and is violative of the relevant case law. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 178 (D. Mass. 2014) citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). *See also Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("Thus 'the right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them.").

6

Furthermore, The Fourteenth Amendment provides in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." This prohibition guards against "the arbitrary exercise of the powers of government." Id. citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, Governor has clearly exercised his powers in an arbitrary and abusive manner, and such conduct cannot stand. As shown in Exhibit A, he originally promulgated regulations which were in line with those of DHS. He clearly recognized the importance of the Second Amendment, the rights afforded by it, and did not seek to interfere with it. Following this, AG posted a tweet which asserted that such businesses are not essential. Exhibit B. Shortly thereafter, Governor revised the regulations he had posted and removed gun stores and shooting ranges. Such arbitrary and capricious behavior by an individual, entrusted to uphold and defend the rights of all, cannot and should not be permitted to stand. This is especially true as it is clear that he was influenced by AG and her personal agenda, and as such his conduct is arbitrary and capricious, not a reasonable exercise of his authority, and violative of the Second Amendment. Therefore, Plaintiffs are likely to prevail on their claim for violation of the Second Amendment, and issuing a TRO is proper.

Plaintiffs have also alleged violations of Article XVII of the Massachusetts Declaration of Rights, and they are likely to succeed on this claim as well. Article XVII states, "The people have a right to keep and to bear arms for the common defence." *Massachusetts Declaration of Rights – Article 17*. Here, Governor has effectively abridged this right, by denying all but a small, and select group, of individuals from being able to obtain and keep arms for their defense. He has ordered all gun stores and shooting ranges to close, and remain closed, until at least May 4th, but makes no guarantee that they will be allowed to reopen at that time. Governor has, however, carved out an exception to this for law enforcement inside the Commonwealth. *Exhibit*

7

*D.* As clearly stated in Exhibit D, Governor has denied all citizens their rights guaranteed under the Massachusetts Declaration of Rights, while allowing a select few, law enforcement, to retain theirs. This exception does not apply only to Police Departments for use in their official capacity; ANY law enforcement officer can still obtain firearms and ammunition, at any time, and is free to use it as he sees fit. Governor has created two classes of citizens inside Massachusetts, and this is unacceptable. There cannot be two classes of citizens, with two sets of rules applicable to each, and so Governor's order should be overturned.

Plaintiffs are also likely to succeed on their claim for deprivation of due process rights, and so injunctive relief is warranted. The reason for this, is that Governor has stripped all Plaintiffs of Constitutionally protected rights to one degree or another. The Plaintiff businesses have been stripped of their property rights in their licenses, which are protected by the due process clause of the Fourteenth Amendment. "It is clear that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause." *Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 2649 (1979). Furthermore, GOA's members and supporters, Michael and Doris, have seen their Second Amendment rights abridged without due process, which also violates the Fourteenth Amendment. "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amen. XIV. Such conduct is clearly unlawful on its face, and thus Plaintiffs are likely to succeed on this claim as well.

For Plaintiffs to receive injunctive relief, they need only "establish that they are likely to prevail on one or more of their claims." *McKenzie v. Option One Mortgage,* 321 F.Supp.3d 186, 188 (D.MA 2018). Despite this, Plaintiffs have shown that they are likely to prevail on all of their claims. Furthermore, Plaintiffs have shown that the probable outcome will be success on at least one, if not all, of their claims. "To establish a likelihood of success on the merits, the

district court must only determine the 'probable outcomes.' *AngioDynamics, Inc. v. Biolitec AG*, 910 F.Supp.2d 346, 352 (D.MA 2012) citing *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 238 (1st Cir.1986).  As Plaintiffs have shown that they are likely to succeed on at least one of their claims, are currently suffering irreparable injuries, and such injury will continue and increase in the absence of injunctive relief, the same should issue forthwith.

Finally, it is essential to note that, in the First Circuit, likelihood of success on the merits is not measured in a vacuum.  Rather, it is done, "on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Braintree Labs. v. Citigroup Global Markets Inc.*, 622 F.3d 36, 42–43 (1st Cir.2010).  As such, even if this Honorable Court determines that Plaintiffs' likelihood of success is not overly strong, they are still entitled to injunctive relief, based at least in part on the magnitude of the irreparable harm they are, and continue to, suffer in its absence.  As such, a TRO should issue forthwith.

**C.  Plaintiffs Will Suffer Immediate Irreparable Injury in the Absence of Injunctive Relief**

Plaintiffs' are entitled to injunctive relief, as they are able to show that they are currently suffering irreparable injuries, and that in the absence of injunctive relief, such injury will only continue and compound.  In addition to the current harm they are suffering, Plaintiff businesses will shortly suffer irreparable harm in the form of being forced to cease all operations and to forever close their doors. *Exhibits E & F*.  Such harm not only meets, but surpasses, the threshold required in the First Circuit, and so injunctive relief is proper.  "To establish irreparable harm, however, a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,  102 F.3d 12, 18, 31 UCC Rep.Serv.2d 327 (1st Cir. 1996).  Here, Plaintiff businesses have shown, through the attached affidavits, and simple common sense, a business cannot survive without income, that the denial

of injunctive relief will be fatal to their business, thus have established an irreparable harm, which will occur immediately, and so injunctive relief is proper.

While Plaintiffs seeking injunctive relief need not show that the denial of such would be fatal to their business, they are required to make some showing of irreparable harm. Here, as above, Plaintiff businesses can show that they are entitled to injunctive relief, and so the same should issue. For injunctive relief to be warranted, "It is usually enough if the plaintiff shows that its legal remedies are inadequate." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 18, 31 UCC Rep.Serv.2d 327 (1st Cir. 1996) citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). In this case, Plaintiff businesses, and indeed all Plaintiffs, have literally *NO* other remedy available to them at law. They cannot stay open as they have been ordered to close their physical locations, and to cease all activities until at least May 4th. They cannot sell their wares, so no capital is coming in, and Governor has stated they are not eligible for emergency funds which would see them through this time. This being the case, Plaintiff businesses are completely boxed in and left with no legal options to alleviate the irreparable injuries they are suffering, and to avoid further irreparable injury. Thus, their only option is to seek a TRO which would allow them to resume operations forthwith.

Plaintiffs are also entitled to injunctive relief, as they have shown that they currently are suffering irreparable harm, that this harm will only continue and magnify, and need show nothing more. "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 22, 129 S.Ct. 365, 375, 172 L.Ed.2d 249 (2008) citing *Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Here, Plaintiff businesses, and indeed all Plaintiffs, have shown that irreparable injury is not just likely, but as nearly certain as can be. As discussed above, Plaintiff businesses are already suffering irreparable harm in the form of lost profits, lost business opportunities and lost good will.

10

GOA's members and supporters, Michael and Doris are also suffering the same, as they are being denied their Constitutionally protected rights, and so injunctive relief is warranted.

GOA's members and supporters, Michael and Doris, are entitled to injunctive relief, as their Second and Fourteenth Amendment, as well as Article XVII rights are currently being infringed, and as such have already suffered irreparable harm. The reason for this, is that when an individual is denied a Constitutional right, for even a brief time, they have suffered an irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). While the Court in *Elrod*, was discussing the First and not Second Amendment, the principle remains the same; denial of an individual's Constitutional right, for even the briefest of times, is an irreparable injury. Even the Ninth Circuit has recognized the same right. "Thus 'the right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). Here, GOA's members and supporters, Michael and Doris have not been denied their Constitutional rights for a brief period of time; it has been over two weeks, and in the absence of court intervention, will be much longer. As such, they have demonstrated a cognizable injury which satisfies the immediate irreparable injury standard, and thus injunctive relief is warranted.

**D. The Balance of Equity is in Favor of the Plaintiffs**

Plaintiffs are entitled to injunctive relief as the balance of equity is in their favor. The reason for this, is that in cases such as these, injunctive relief is proper. "An injunction should issue only where the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable."" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803 (1982) citing *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 143, 63 L.Ed. 354 (1919). As discussed above, Plaintiffs are currently and

continuously being deprived of their Constitutional and property rights, are and will continue to suffer immediate irreparable injuries.

Plaintiff businesses each possess a Federal Firearms License, and/or State License, which permit them to operate a lawful business. Despite this, these Plaintiffs are being denied their property rights in their licenses, without due process under the law. These Plaintiffs are also currently suffering, and will continue to suffer, irreparable injuries, in that they have been shuttered, and will remain so until at least May 4th. Furthermore, they are being denied access to emergency funds which would help them through this difficult time. Additionally, GOA's members and supporters, Michael and Doris, are suffering an immediate irreparable injury in that they have been, and will continue to be, deprived of their Second and Fourteenth Amendment Rights, and their Article XVII rights. As all Plaintiffs have been stripped of their Constitutional and property rights without due process under the law, and each are currently suffering irreparable injuries, which will only continue and worsen, culminating in utter ruin for many of them, they are entitled to injunctive relief.

"It goes without saying that an injunction is an equitable remedy. It "is not a remedy which issues as of course."" *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803 (1982) citing *Harrisonville v. W.S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 337-338, 53 S.Ct. 602, 603, 77 L.Ed. 1208 (1993), or "to restrain an act the injurious consequences of which are merely trifling." Id. citing *Consolidated Canal Co. v. Mesa Canal Co.,* 177 U.S. 296, 302, 20 S.Ct. 628, 630, 44 L.Ed. 777(1900). Plaintiffs are not seeking an injunction, "as of course," or over "merely trifling," injurious consequences. Plaintiffs are seeking an injunction to prevent the continuing deprivation of their Constitutional rights, and to avoid the permanent closure and/or bankruptcy, of their businesses.

As detailed above, GOA's members and supporters, Michael's and Doris', ability to purchase, possess and train with firearms or ammunition in Massachusetts, have been

substantially infringed, despite these being protected rights. "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 178 (D. Mass. 2014) citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). As this Circuit has previously recognized that the right to train and practice with firearms is a corresponding right to the purchase and possession of them, Governor's order is violative of GOA's members and supporters, Michael's and Doris' rights in about as many ways as it possibly can be. As such, it cannot not nor should not, be allowed to stand. Furthermore, Plaintiff businesses have been shuttered, and will soon be forced into bankruptcy and/or permanent closure, should they not receive the relief which is being requested. As all of the Plaintiffs are currently, and will continue to, suffer an immediate irreparable injury, and such injuries are not merely trifling, but are actually quite severe in nature, issuance of a TRO pending a full hearing on the merits is proper.

Such relief is proper, because "the purpose of such interim equitable relief is not to conclusively determine the rights of the parties, *University of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), but to balance the equities as the litigation moves forward." *Trump v. International Refugee Assistance Project*, 137 S.Ct. 2080, 2087, 198 L.Ed.2d 643 (2017). Plaintiffs are not attempting to determine the rights of the parties, but instead are attempting to maintain the status quo as it existed prior to March 23rd. They are attempting to restore and preserve the Constitutional rights of which Governor, acting in concert with AG, has, and continues to, deprive them. Plaintiffs are not seeking to ignore public health and social distancing guidelines, but rather are seeking to have their rights restored and respected, while simultaneously respecting public health guidelines. Plaintiffs are ready, willing and able to comply with the published guidelines, but have still seen their rights stripped away, despite the recommendations which have been promulgated by the Federal Government.

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. International Refugee Assistance Project,* 137 S.Ct. 2080, 2087, 198 L.Ed.2d 643 (2017) citing *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (3d ed. 2013). Plaintiffs are appealing to this Court's discretion and judgment to provide them with relief which will allow them to continue exercising their Constitutional rights, to continue operating their businesses, and to prevent any further irreparable harm. GOA's members and supporters, Michael, and Doris, are being denied their right to purchase, possess and train with firearms and ammunition during this time, as Governor has closed all retail establishments which would allow them to do so. While they could potentially purchase firearms and ammunition from private sellers, this is an extremely remote possibility at best, and still impermissibly burdens their right to do so and leaves them without the ability to train with them. Plaintiff businesses are being denied their Constitutional and Property rights in their respective licenses, and are being pushed into permanent closure and/or bankruptcy. All of this is being done despite the fact that all Plaintiffs are ready, willing, and able to comply with the proper health guidelines and have stated that they would willingly do so. Plaintiffs implore this Court to exercise its sound discretion and judgment, and to grant the relief requested before many of them are faced with utter ruin.

Having shown that the balance of equities is tilted in their favor, Plaintiffs are entitled to injunctive relief. The scale which holds the balance of equities, is so tilted, because on one side is the Plaintiffs' Constitutional rights, and on the other, is Governor's order which violates all of them. While Governor will undoubtedly claim that his decision is based solely on stopping the spread of Covid-19, and not out of a desire to trample the rights of Plaintiffs, his own actions show that to be false. He originally listed gun stores and shooting ranges as essential, but quickly

changed his mind when AG publicly announced that she did not approve of this decision. Furthermore, Governor has allowed non-essential businesses such as liquor stores and office supply stores to remain open, provided they follow specified health guidelines and social distancing. He has also allowed restaurants to remain open on a takeout basis only, despite the fact that this can, and likely will, allow Covid-19 to continue to spread. In fact, it appears that he has crafted exceptions which allow more businesses to remain open, rather than close. All of these businesses, which are not subject to Constitutional protections in the way that the Plaintiffs are, and are at best questionably essential, are still being permitted to operate, and gun stores and shooting ranges are not.

Governor does have a compelling interest in stopping the spread of Covid-19, and Plaintiffs have never claimed otherwise. Additionally, Plaintiffs do not claim that Governor should not take any steps to stop the spread of Covid-19. The threat posed by Covid-19 is without a doubt great, and justifies significant sacrifices and adjustments by all. However, no interest, regardless of how compelling it is, can justify the complete denial of Constitutional rights. Governor could not justify banning free speech, the reading of books, nor the right to vote. Furthermore, he could not declare people guilty without trial or due process, nor could he justify searching people's homes without warrants. The Constitution lays the ground floor, beneath which the government cannot go. In dealing with any emergency, and promulgating orders to deal with it, the government must ensure that it does not go too far. Here, Governor has done just that and has greatly overstepped his bounds and legal authority, in promulgating the regulations which he did, in direct conflict with DHS recommendations. As such, it is clear that Governor did not issue his order of April 1st for any proper purpose, but instead did it to infringe on the rights of the Citizens Massachusetts. Therefore, Plaintiffs should be granted the injunctive relief they are requesting.

**E. Public Policy Dictates the Plaintiffs be Granted the Relief Sought**

Public policy dictates that Plaintiffs are entitled to injunctive relief, as Governor's order is nothing less than a categorical ban on obtaining any firearms and ammunition, and as such cannot pass Constitutional muster. The situation here is strikingly similar to the one found in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and so the outcome should be the same. In *Heller*, the city prohibited people from obtaining an entire class of firearm, the handgun. This was struck down by the Supreme Court, as it found such a blanket prohibition to be Constitutionally impermissible. Here, the situation is far worse, and as such cannot stand.

Governor has prohibited the people from obtaining not just one category of firearm, but rather all of them. His order shuttering the retail firearm industry in Massachusetts has denied the people of the Commonwealth the right to obtain firearms for any purpose, and this is Constitutionally impermissible. The reason Governor's order prohibits the people from obtaining firearms, is that outside of a gun store, to acquire a firearm inside Massachusetts, a buyer must find a willing private seller who has not sold more than four firearms in a calendar year. Given the current pandemic, it is highly unlikely that a buyer will be able to find a willing seller. Additionally, should a buyer find such a seller, that leaves the problem of obtaining ammunition for the firearm, as well as gaining proficiency with the same, which under Governor's order, is nearly impossible and as such is not just an infringement, but rather a complete deprivation, of Plaintiffs' rights.

Furthermore, Governor's order shuttering the shooting ranges, is also impermissible under the Constitution. "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 178 (D. Mass. 2014) citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Governor, having already stripped GOA's members and supporters, as well as Michael and Doris, of their right to acquire firearms for the defense of hearth and home, the core right

16

protected by the Second Amendment and Article XVII, has also stripped them of their corresponding right to acquire and maintain proficiency with them. Having done so, he has struck at the very heart of the Second Amendment and Article XVII, and so his order is Constitutionally impermissible, and cannot stand.

Plaintiffs do admit that Governor has a compelling interest in preventing the spread of Covid-19, and have never stated otherwise. However, he has failed to appropriately tailor his shut down order to achieve that interest, and has also failed to respect Plaintiffs' Constitutional rights. The reason for this, is the fact that Governor could still achieve his interest, preventing the spread of Covid-19, without completely shutting down all gun stores and shooting ranges.

Governor has allowed numerous businesses to remain open, provided they adhere to public health regulations and social distancing guidelines. These regulations, which are purportedly aimed at stopping the spread of Covid-19, could easily, and would willingly, be adhered to by each of the Plaintiffs. The Plaintiff businesses could, and would, follow the guidelines which have been, or might be, implemented. Each of the Plaintiff businesses would ensure that their businesses practice all appropriate health guidelines, and that they allow no more than the appropriate number of individuals in their stores. Such regulations would help Governor achieve his compelling interest, and would simultaneously provide for the protection and respect of the Plaintiffs Constitutional rights.

Given that Governor has allowed businesses with no Constitutional protections, such as liquor stores, to remain open as long as they adhere to the aforementioned guidelines, it strains credulity that he will not allow Constitutionally protected ones to do so as well. As the old adage states, "what's good for the goose is good for the gander," and that is certainly true here. As the Plaintiffs have shown that Governor's order shuttering all gun stores and shooting ranges inside the Commonwealth is Constitutionally impermissible, as well as being an arbitrary and capricious one, injunctive relief is proper.

Furthermore, injunctive relief is proper, as public policy dictates that individuals not be deprived their rights without due process under the law. It is undisputed that a central pillar of the American Justice System is that the rights enshrined in the Constitution cannot be abridged without due process under the law. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Taylor v. Kentucky*, 436 U.S. 478 (1978) citing *Coffin v. United States*, 156 U.S. 432, 453 (1895). Despite this fact, Governor has stripped each of the Plaintiffs of their rights without due process under the law. The Plaintiff businesses have a property right in their business licenses, of which they cannot be deprived, without being afforded due process. "It is clear that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause." *Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 2649 (1979). However, Governor has stripped the Plaintiff businesses, and indeed all businesses similarly situated but not named, of these rights, without affording them due process. As his conduct violates Supreme Court precedent, and public policy, it cannot, nor should not, be allowed to continue.

Governor has stripped GOA's members and supporters, as well as Michael and Doris of their Second Amendment and Article XVII rights without due process, and this too is impermissible and violative of public policy. As discussed above, these plaintiffs not only have a right to acquire arms and ammunition for defense of hearth and home, they have a right to train with them, so as to gain sufficient proficiency to make that right meaningful. These rights have not just been infringed by Governor, they have been denied, as he has shuttered all businesses which would allow GOA's members and supporters, Michael and Doris to do so. These Plaintiffs can only acquire firearms and ammunition through private sale, but as previously discussed, that is highly unlikely to happen. And even if they did manage to acquire them through private sale, how are they to exercise their right to practice with them? Governor has closed all shooting

ranges in the Commonwealth, and very few people have sufficient privately owned land on which they can discharge a firearm lawfully. As such, Plaintiffs' rights have been not just infringed, but rather stripped away, and injunctive relief is proper.

In a case such as the one at bar, the balance of equities should be analyzed by weighing an impossible to estimate risk of transmission of a flu-like Corona virus, designated as COVID-19, with as-of-yet unclear transmission rates and serious health consequences, against the definite, concrete, and irreparable harm that all Plaintiffs are, and will continue to, suffer, as discussed above. The risk of COVID-19 to Massachusetts citizens cannot be fully known but, during recent months, various public health officials have routinely over-estimated the infectiousness, morbidity, and mortality from COVID-19. See, e.g., Nick Arama, Good News: "IHME Revise Their Numbers Down as to Deaths, Hospitalizations, Bed and Ventilator Need," RedState (Apr. 6, 2020).

Whatever the risk of transmission may be, such risk would be borne primarily by those who have chosen to accept that risk; customers of gun stores and shooting ranges, and those employed by them. Indeed, every time a person goes to a food store to make a purchase, or goes to work at that person's place of businesses which are allowed to be open, one assumes some risk of being exposed to COVID-19. But that is no reason to close food stores or all businesses, and the Governor, in his order, agrees. Governor clearly feels that such risk is justifiable if someone is going to a liquor store to purchase alcohol, or to a restaurant to carry out a pizza, despite the fact that neither of these activities is Constitutionally protected. When it comes to Constitutionally protected activities however, he feels that denying individuals their rights is perfectly fine; provided they can still purchase beer and pizza.

Finally, public policy dictates that injunctive relief be granted, as having Governor follow the law, is of the utmost importance. "In essence, the government, as well as the governed, must follow the law. *Jimenez v. Cronin,* 317 F.Supp.3d 626, 638-639 (D.MA 2018). Here however,

Governor has used the government to elevate himself to a position which is above the law, and this cannot stand. Even the English courts at early common law understood that the king himself was not above the law. "Even so, from an early date it was understood that the King, too, was subject to the law. As the writers said of Magna Carta, "it means this, that the king is and shall be below the law." *Boumediene v. Bush,* 553 U.S. 723, 741, 128 S.Ct. 2229, 2245 citing 1 F. Pollock & F. Maitland, History of English Law 173 (2d ed.1909); see also 2 Bracton On the Laws and Customs of England 33 (S. Thorne transl. 1968). Despite this, Governor has, continues, and plans to continue, behaving as though he is above the law and this cannot stand. He has infringed on not only the property rights of the Plaintiff businesses, but has trampled the Second Amendment, Article XVII and due process rights of all the plaintiffs, and plans to continue doing so for the indefinite future. This should not be allowed to continue, and so injunctive relief is warranted.

**F.  Plaintiffs Should Not be Required to Post a Bond**

Pursuant to Fed. R. Civ. P. 65, Plaintiffs should not be required to post a bond upon issuance of a Temporary Restraining Order. Governor will not suffer any cognizable injury which would necessitate relief, should the TRO issue, and be subsequently vacated. The relief sought in this motion, is simply the preservation of Plaintiffs' Constitutional and due process rights, and nothing more. Because of this, no bond should be required.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons the Plaintiffs have met the necessary burden for the issuance of an Emergency Ex-Parte Temporary Restraining Order, and their motion should be granted.

*WHEREFORE,* based on the foregoing memorandum, the preceding motion and attached affidavits, the Plaintiffs respectfully request this Honorable Court issue an Emergency Ex-Parte Temporary Restraining Order, preventing the Defendants from enforcing the order of April, 1st.

Respectfully submitted,
The Plaintiffs,
Cedrone, LLC d/b/a Shawsheen Firearms,
Gun Owners of America, Inc.,
Hardwick Rod and Gun Club, Inc.,
Tools of Liberty,
Magnum Enterprises, LLC d/b/a Bear Arms,
Brophy's Fine Firearms, Inc.,
Bachant Armaments Corporation,
OuterLimits, LLC d/b/a OuterLimits Pro
Shop,
Overwatch Outpost,
J & J Arms, LLC,
Armour Sports, Inc.,
By their attorney,

*/s/ Andrew J. Couture*
Andrew J. Couture, Esq. BBO # 671193
Law Office of Andrew J. Couture
81 Merriam Avenue
Leominster, MA 01453
Tel: (978) 502-0221

Dated:  April 15th, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Andrew J. Couture*
Andrew J. Couture, Esq. BBO # 671193

Dated:  April 15th, 2020