# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Cedrone, LLC d/b/a Shawsheen Firearms, et. al.,        Plaintiffs | ) ) ) ) |
| v. | )    Civil Action No.:  4:20-cv-40041 |
| Charles Duane Baker, Jr., in his Capacity as Governor of the Commonwealth of Massachusetts, et. al.,        Defendants | ) ) ) ) ) |

## REPLY IN SUPPORT OF
## PLAINTIFFS' EMERGENCY MOTION FOR EX-PARTE TEMPORARY RESTRAINING ORDER

Plaintiffs Cedrone, LLC d/b/a Shawsheen Firearms, et. al. ("Plaintiffs") submit this Reply in Support of their Emergency Motion for Ex-Parte Temporary Restraining Order.  Defendants Charles Duane Baker, Jr., et. al. ("Defendants") raised in their opposition new arguments which had not been previously addressed by Plaintiffs, and require clarification.  Defendants argued the improper level of review for this case; misstate or do not address relevant and crucial items, and seek to interject new issues not originally raised, and as such a reply brief is warranted. Finally, Defendants' have stated they do not oppose the filing of a reply brief by Plaintiffs.

## 1I.     The Appropriate Test Is Found in the Text of the Second Amendment.

In its Second Amendment analysis, the CW first attempts to artificially cabin *Heller* to the four corners of the Court's opinion, arguing that the Second Amendment protects at best a "limited right" to keep (but not bear) a handgun (but no other arm) in the home (but no other place) for self defense (but no other purpose).  *Id.* at 7.  Viewed through that lens, the CW argues that complete bans on the commercial sale of arms "do not heavily burden the right of law-aiding, responsible individuals to use arms in defense of hearth and home."  *Id.* at 8-9.  Thus, the CW concludes, its complete ban is permissible because it does not prohibit "using" or

"possessing" ones firearms are already owned.  This is, of course, like saying that a government ban on new Twitter accounts is permissible, because those who already have accounts can continue to Tweet.

The CW then backtracks a bit, apparently admitting that the Second Amendment perhaps conceivably could protect *something more* than the narrow question at issue in *Heller*.  Even so, the CW claims the right to *acquire* a firearm "fall[s] outside the **core** of the Second Amendment," which again is only the limited right to keep a handgun in the home for self-defense.  *Id.* at 8.  Of course, while *Heller* certainly described the right to keep a handgun in home for self defense as "core," the Court never concluded that the Amendment's other protections were non-core, or "peripher[al]," and thus deserving of lesser protection.  *See id*. at 8.  On the contrary, according to the unambiguous text of the Second Amendment, if a given person, arm, and activity falls within the scope of the Second Amendment, then any "burden" (*i.e.*, "infringement") of that right is impermissible, because the right "shall not be infringed."

Presumably, no court would conclude that the ability of law abiding Americans to purchase arms and ammunition is outside the scope of the Second Amendment.  Indeed, other courts have concluded that the right to acquire arms and ammunition, and to train with the same, are clearly within the Amendment's protection. Thus, because the ability to purchase firearms and ammunition is so clearly a protected activity, the ability to do so "shall not be infringed" — not even "temporarily," and not even during a pandemic.  If constitutional protections that can be overridden during times of uncertainty, then the Bill of Rights is a parchment barrier.

## II.     Even If the Second Amendment Were Subject to Balancing Tests, this Case Presents a Categorical Ban Similar to that Struck Down in Heller.

Although this case is easily resolved based on the plain text (not to mention the history —

except for actions by the British Crown precipitating the Revolutionary War, there is simply no founding era analogue of a complete ban on the commercial sale of arms) of the Second Amendment, the CW urges this Court to apply the judicial interest balancing "two step" test sometimes applied in this Circuit, which permits judges to balance away constitutional rights in the name of public safety and other so-called "compelling" governmental interests.  Simply put, that is the wrong test, as it flaunts the Second Amendment's self-contained standard of review "shall not be infringed."

The two-step test permits judges to go beyond that clear and simple standard, to take laws which admittedly "burden" or "impinge" Second Amendment rights, and nevertheless to uphold them based on based on "intermediate" or "strict scrutiny."    Of course, as the Court in Heller noted, "[t]he *Second Amendment* is ... the very *product* of an interest balancing by the people," and is "enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."  *Id.* at 634-35.

Of course, even if this Court were to follow the "two step test," as it may find itself required by this Circuit's precedent to do, that still does not mean that "intermediate" or "strict" scrutiny applies here.  Rather, this case is resolved on the simple basis the CW has engaged in a *categorical ban* on the commercial sale of arms.  As in *Heller*, the CW's "total ban on [the commercial sale of arms] amounts to a prohibition on [the acquisition of] an entire class of 'arms' that Americans overwhelmingly choose for the lawful purpose of self-defense."  *Id.* at 628.  Thus, as in *Heller*, "[u]nder any of the standards of scrutiny ... this prohibition ... would fail constitutional muster."  *Id.*

**III.     Even If this Court Decides to Apply Scrutiny, Then Strict Scrutiny Should Be**

**Applied.**

Defendant's urge this Court to review the, "Orders under, at most, intermediate scrutiny, and to uphold them under that standard.  Defendants' Opposition pg. 8.  Adopting this standard would be incorrect, as intermediate scrutiny is not the appropriate level of review for this case. As Plaintiffs have clearly articulated from the beginning, the Order is nothing less than a complete ban on the commercial sale of firearms in the Commonwealth, and is thus Constitutionally impermissible.  Should this Court disagree, Plaintiffs alternatively argue that strict scrutiny is the only appropriate level of review, and so the Order should be struck down.

In their Complaint, Plaintiffs argued that the Order in question was nothing less than a complete ban on the acquisition of firearms, and as such could not pass Constitutional muster.  In the case of *District of Columbia v. Heller,* 554 U.S. 570 (2008), the city of Washington D.C. prohibited people from obtaining an entire class of firearm, the handgun, and this was struck down.  The reason for this, is that the Supreme Court ruled that a blanket prohibition such as the one in *Heller,* was Constitutionally impermissible.  As a complete prohibition is not, and cannot, be permissible, no level of judicial review is appropriate here; the Order must be struck down.

Should this Honorable Court feel that the Order is not a blanket prohibition, the appropriate standard of review is strict, rather than intermediate, scrutiny.  The Order must be reviewed under strict scrutiny, because the, "First Circuit has indicated that "intermediate scrutiny is appropriate as long as a challenged regulation … fails to implicate the core Second Amendment right," I find intermediate scrutiny to be the correct level of scrutiny to assess the constitutionality of these provisions."  *Morin v. Lyver,* 2020 WL 1046628 (D.MA March 4, 2020) citing *Worman v. Healey,* 922 F.3d 26, 38 (1st Cir. 2019).  Thus, it is logical to infer, given the foregoing, if a challenged regulation strikes at the core of the Second Amendment, the appropriate standard of review would be strict scrutiny.

4

Here, the Order strikes at the very heart of the Second Amendment, as it completely prohibits the acquisition of firearms and ammunition, by nearly all individuals in the Commonwealth, for any purpose at all.  The Order strikes at the core of the Second Amendment, because, "at its core, the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller,* 554 U.S. 570, 635, 128 S.Ct. 2783 (2008).  While it is true that the Court in *Heller* did discuss the right to keep a handgun in home for self-defense as being at the core of the Second Amendment, it never concluded, nor even alluded to, the Amendment's other protections being outside the core and thus deserving of less protection, despite Defendants' contentions otherwise.

Defendants argue that because they have not seized the firearms of anyone who owned them, or prohibited those individuals from using them, that the Order does not violate the Second Amendment; it does.  It violates it because the right to use arms to defend one's home is entirely meaningless if you cannot acquire the arms necessary to do so, and that is what the Order does. It prevents nearly everyone who does not already own one from being able to obtain firearms. As established, the possibility of completing a private sale inside Massachusetts is extremely remote under even the best of circumstances, which this certainly is not.  Despite this fact, Defendants argue that because this remote possibility exists, they haven't implicated the core right protected by the Second Amendment; such argument is laughable.  It is laughable, because it would be no different than if Defendants had outlawed protected medical procedures and then argued such conduct is permissible because individuals could still find an unlicensed practitioner to conduct the procedure in a back alley.

In their brief, Defendants' fail to realize that their, "adequate alternatives," argument has already been tried, and rejected by the Supreme Court in *Heller.*  "It is no answer to say, as

petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.,* long guns) is allowed." *District of Columbia v. Heller,* 554 U.S. 570, 630, 128 S.Ct. 2819 (2008). Here, the residents of the Commonwealth have not been denied the right to acquire a single type of firearm; they have been denied the right to acquire *any* type. Furthermore, they have a desire to acquire arms *now,* not before, and not later. They are not required to wait until after the crisis is over, and when their acute need to protect themselves in their homes is lessened. The government does not get to decide when, or on what terms, a person gets to exercise his or her Constitutional rights. Given that the core of the Second Amendment has been burdened, and this Circuit has held that such a burden must be reviewed under strict scrutiny, Defendants' argument for intermediate scrutiny fails.

The Strict Scrutiny standard, "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 135 S.Ct. 2218, 2231 (2015) citing *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. ——, ——, 131 S.Ct. 2806, 2817, 180 L.Ed.2d 664 (2011). Here, Plaintiffs admit that Defendants have a compelling interest in preventing the spread of Covid-19, and have never stated otherwise. However, the Order which was issued, is far from narrowly tailored. The reason, is that the compelling interest could still be achieved without completely shuttering all gun stores and shooting ranges.

Numerous businesses have been permitted to remain open inside the Commonwealth, despite not being protected, provided they adhere to public health regulations and social distancing guidelines. These regulations, which are aimed at stopping the spread of Covid-19, could easily, and would willingly, be adhered to by each of the plaintiffs. Plaintiffs who operate properly licensed businesses could, and would, follow the guidelines which have been, and may be,

implemented.  Each of the plaintiffs would ensure that their businesses practice all social distancing guidelines, require their employees wear appropriate masks, and that they allow no more than the appropriate number of individuals in their stores, given the current health crisis. Such regulations would further the compelling governmental interest, but would be narrowly tailored to such a degree that their rights would not be infringed as they currently are.  Given that businesses with no Constitutional protections, such as liquor stores, can remain open as long as they adhere to the aforementioned guidelines, it strains credulity that those with Constitutional protection cannot.  As the old adage states, "what's good for the goose, is good for the gander," and that is certainly true here.

Given the current pandemic, it is highly unlikely that a buyer will be able to find a willing seller.  Additionally, should a buyer find such a seller, that leaves the problem of obtaining ammunition for the firearm, as well as gaining proficiency with the same, which under Governor's order, is nearly impossible and as such is not just an infringement, but rather a complete deprivation, of Plaintiffs' rights.  "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 178 (D. Mass. 2014) citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).  Defendants, having already denied nearly everyone in the Commonwealth of their right to acquire firearms for the defense of hearth and home, have also stripped them of their corresponding right to acquire and maintain proficiency with them.  Having done so, Defendants have not just struck at the core of the Second Amendment, they have denied the rights protected by it entirely, and so the Order cannot stand.

The Plaintiffs contend that no level of scrutiny is appropriate here, as the Order is nothing less than a blanket prohibition on the acquisition of firearms. However, should this Honorable Court feel that is not the case, Plaintiffs argue alternatively that strict scrutiny should be applied, as the Order clearly burdens the core Second Amendment right. Therefore, Defendants' position that intermediate scrutiny should be used is incorrect and should not be followed.

### IV.      The Delays Being Experienced Are Not Constitutionally Permissible

In their opposition to Plaintiffs' motion for a TRO, Defendants argue that the order is nothing more than a mere delay and as such should be upheld. Defendants' Opposition Pg. 10. The Order which was issued, updated and is likely to be continued, is being labelled by Defendants' as nothing more than a mere inconvenience; it is far from that. It has amounted to a more than month long inability to acquire firearms and ammunition and is poised to extend even further. As such, it is far from a short delay, and Plaintiffs are not unreasonably demanding to acquire firearms and ammunition the moment they are sought. Given this fact, the Order is unconstitutional and cannot stand.

Despite this, Defendants would have this Court believe that the Order is nothing more than a temporary inconvenience to those wishing to exercise their Constitutional rights, as there is really only a short delay occurring, and the order is thus Constitutionally permissible. Nothing could be further from the truth. The reason the Order is more than a mere inconvenience and a short delay, is that the Order has been in effect since March 23rd, and by the time of hearing, will have been in effect for a total of seven weeks and is ordered to continue an additional two weeks beyond that. This means that in the absence of injunctive relief, Plaintiffs and all citizens of the Commonwealth will have been denied their rights for at least sixty-three days, with only a mere possibility of the Order being rescinded. While Defendants urge that a delay of up to ninety days

8

is acceptable and indeed normal, this is disingenuous at best. Defendants Opposition, Pg. 8, Footnote 3. The 90 day delay to which Defendants refer, is for not only first time buyers, but also new applicants who have never before held an LTC or FID. This is entirely different from the situation at bar. The individual plaintiffs who are seeking the assistance of this Court are already licensed and able to purchase firearms. They are not initial applicants seeking their license for the first time. Rather, they have already been issued the proper license, have gone through any waiting period, but are still being denied their rights.

Plaintiffs, and those similarly situated but not named, have been, and continue to be, denied their rights for far longer than is ever acceptable. Plaintiffs are not experiencing a short delay in the acquisition of firearms, which is unlikely to exceed the currently accepted waiting periods. They are experiencing an indefinite delay which is set to exceed eight weeks, with no likely end in sight. Defendants have not given a clear answer as to when the restrictions will be lifted and business allowed to continue and in their own words have stated they don't know when that will happen.

No court, anywhere in the country, has ever considered – much less approved of anything approaching an eight week "waiting period" to acquire a firearm. Conveniently ignoring this fact, Defendants claim that "delay has always been inherent in the process of acquiring a weapon." Defendants' Opposition Pg. 10, Footnote 1. This position is completely unsupported and ignores the lengthy history of America, in which individuals were able to acquire firearms from their local general store, at nearly anytime they wished. Furthermore, Defendants attempt to defend their actions because a gun purchase may be delayed by the background check process. This argument is belied by the very name of that process – the National *Instant* Background Check System – and the fact that roughly 92% of applicants are cleared instantly.[1] Finally,

---

[1] http://graphics.wsj.com/gun-check-explainer/

Defendants argue that there is always a delay because it takes time for a distributor or manufacturer to ship a gun.  This argument is not only inaccurate, it is completely irrelevant.  Plaintiffs, and those like them, are not seeking to purchase firearms located somewhere else in the country, and have them shipped into Massachusetts.  They are seeking to purchase firearms presently located inside Massachusetts, meaning no delay would occur.  If Plaintiffs did choose to purchase a firearm from a distributor or manufacturer, that would be a voluntary delay, which was the product of a private contract which had been willingly entered into, and not at all relevant here.  Despite this, Defendants contend that this somehow equates to or justifies an involuntary delay mandated by the government; it does not.  As such, Defendants have greatly overreached in the Order, have imposed much more than a mere delay or inconvenience, have attempted to muddy the waters to conceal this fact, and the unconstitutional delays cannot be permitted to continue.

The reason for this, is that when an individual is denied a Constitutional right, for even a brief time, they have suffered an irreparable injury.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  While the Court in *Elrod* was discussing the First and not Second Amendment, the principle remains the same; denial of an individual's Constitutional right, for even the briefest of times, is an irreparable injury and thus impermissible.  Here, Plaintiffs have not been denied their Constitutional rights for a brief period of time; it has been over a month, and in the absence of court intervention, will be much longer.  As such, they have demonstrated a cognizable injury which satisfies the immediate irreparable injury standard, on which they are likely to succeed, and injunctive relief is warranted.

Having satisfied the requirements which would justify the issuance of a TRO or

Preliminary Injunction, the same should issue forthwith.  Plaintiffs have shown that the delay

being imposed on them is more than a mere inconvenience or brief delay, despite the

Defendants' contentions otherwise.  Furthermore, Plaintiffs have demonstrated that the delays

are constitutionally impermissible under the relevant case law.  Given the foregoing facts,

Plaintiffs are entitled to injunctive relief.

**V.     The Right to Acquire Ammunition is Within the Core of the Second Amendment and a Few Retailers Remaining Open Does Not Change This Fact**

Defendants argue that because Plaintiffs could theoretically purchase some ammunition

at retailers such as Wal-Mart, the Order does not violate their right to obtain ammunition for

lawful purposes.  This position ignores basic facts which when brought into the light of day,

show that the mere fact Wal-Mart sells some brands of ammunition, does not sufficiently protect

the rights of Plaintiffs.  Finally, it is recognized that the right to acquire ammunition is within the

core of the Second Amendment. Not all brands of ammunition are equal, or appropriate for

defense of hearth and home, and as such the limited supply Wal-Mart carries does not satisfy the

Second Amendment.  As such, Defendants' order shuttering the retail firearm industry in the

Commonwealth should be reversed.

It is no secret that Wal-Mart no longer sells most types of ammunition most commonly

used for the purposes of self-defense.[2]  Because of this, Plaintiffs, and those similarly situated

but not named, are left without the ability to acquire ammunition for the firearms most

commonly used for defense of hearth and home.  "It is enough to note, as we have observed, that

the American people have considered the handgun to be the quintessential self-defense weapon.

There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store

---

[2] https://www.chicagotribune.com/business/ct-biz-walmart-handgun-ammunition-20190903-v7qqfl4l7zc2dd6cd2bum2wu5q-story.html

in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police." *District of Columbia v. Heller,* 554 U.S. 570, 630, 128 S.Ct. 2819 (2008).  Here, Plaintiffs, and indeed all citizens of Massachusetts, are unable to acquire ammunition for the preferred firearm for home defense; the handgun.  By it's own initiative, Wal-Mart has ceased selling handgun ammunition, which leaves Plaintiffs in a no-win situation.  They cannot go to a gun store and purchase ammunition for the "quintessential self-defense weapon," and they cannot obtain this ammunition from Wal-Mart either.  As such, the Order clearly violates the core of the Second Amendment.  "Thus 'the right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them." *Jackson v. City & County of San Francisco,* 746 F.3d 953, 967 (9th Cir. 2014), see also *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 178 (D. Mass. 2014) citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).  Having recognized that Second Amendment provides not only a right to possess firearms for defense of hearth and home, but also the right to acquire ammunition for them, it is clear that Defendants' actions are unconstitutional.

Finally, it is essential to note that not all ammunition is appropriate for use in self-defense or in defense of hearth and home.  There are two distinct types of ammunition in the world; personal defense and so called range ammo.[3]  What Defendants ignore in their Opposition, is that Wal-Mart does not sell *any* personal defense or handgun ammunition, it sells only range ammunition.[4]  As this is the case, Plaintiffs are left without the ability to purchase self-defense ammunition of any kind, and certainly not the ammunition needed for the "quintessential self-

---

[3] https://www.thetruthaboutguns.com/range-ammo-is-a-terrible-choice-for-self-defense-ammo/
[4] https://www.chicagotribune.com/business/ct-biz-walmart-handgun-ammunition-20190903-v7qqfl4l7zc2dd6cd2bum2wu5q-story.html

defense weapon." As such, Defendants have completely cut off Plaintiffs' ability to purchase ammunition, in utter violation of the Second Amendment, despite it being a protected right, and say it is okay because Plaintiffs are permitted to purchase a limited supply of ammunition, which does not meet the needs of Plaintiffs. As such, injunctive relief is warranted and should issue.

## VI. Defendants Shutdown of Plaintiff Gun Stores and Shooting Ranges is Unlawful and Violative of Due Process

Defendants argue that the Second Amendment does not protect the dealer Plaintiffs and that the Order comports with due process; they are wrong on both counts. Because of this, the Order should not be allowed to stand and injunctive relief should issue.

Plaintiffs do not dispute that the Supreme Court in *Heller* stated that laws imposing conditions and qualifications on the commercial sale of firearms are presumptively lawful. Defendants' Opposition Pg. 17-18. What Defendants fail to acknowledge in their brief, is that such presumptions are rebuttable, and that Plaintiffs are able to rebut the presumption of lawfulness here.. Plaintiffs are not attacking the regulations which were in place prior to the Covid-19 orders, they claiming that all regulations currently in place are unlawful, or that some regulations are not in order; they are not without reason. What they do claim, is that the Order, which shuttered the commercial firearms industry in the Commonwealth, is not lawful.

The reason for which the Order is unlawful, is that it has stripped Plaintiffs of their property interests in their respective licenses, without even the barest hint of due process. While Defendants argue that such deprivation is not in violation of the due process clause, it certainly is. It is violative, because before a government can lawfully deprive someone of their license, they must provide due process to them. "It is clear that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause." *Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 2649 (1979). Plaintiffs are not alleging that they were entitled to full due

process before the closure mandated by the Order.  Rather, they are alleging, and rightfully so, that before the Order was extended *indefinitely*, that they are entitled to some measure of due process under the law.  Despite this fact, Defendants have deprived, and continue to deprive, Plaintiffs of due process for the foreseeable future.  Defendants do so, while stating that it is all in the name of the common good, and essentially stating, "if you don't agree with us you want us to die."  Because of this, and the motivation which drove Defendants to issue such an order, the Order cannot stand.

It is telling that Defendants were forced to rely upon a case which was settle 118 years ago to support their position.  The reason they were forced to do so, is that since then, there hasn't been a comparable situation since that time.  While Plaintiffs do admit that the government does have the right to ensure the health, safety and welfare of its' citizens, that right is not without limits.  Since the year 1902, there have been numerous pandemics and outbreaks, none of which resulted in the draconian measures which have been taken here.  Of note, in recent years, the bird flu and swine flu occurred in the United States and indeed inside Massachusetts.  Reaching further back into time, the Spanish flu also occurred inside Massachusetts.  Despite this fact, no measures such as the Order in contest were taken during any of those outbreaks.  Constitutional rights were still protected, and due process afforded.  In fact, measures such as these were never seriously considered until Defendants took office, at which time they were implemented, violating the rights of everyone inside the Commonwealth.

Furthermore, it is important to note that these unlawful and draconian measures were not initially put in place.  In fact, the Second Amendment and businesses were actually protected under the original Order, and proof of that was submitted in the Cedrone Plaintiffs' motion for an

ex-parte TRO.  It was not until the Attorney General expressed her displeasure with the order allowing gun stores and shooting ranges to reopen, that the regulations were revised.

Finally, it is important to note that while nearly all businesses within the Commonwealth are entitled to some form of relief aid or assistance during this time, Plaintiff businesses are not. Defendants have made it quite clear that gun stores and shooting ranges are not eligible for such aid during this time, but that they cannot reopen either.  This arbitrary and capricious decision makes clear that the decision to shutter these businesses was not based on a legitimate concern about the spread of Covid-19, but rather was merely a convenient cover for doing so. Additionally, Defendants' claiming that no other businesses filing suit is relevant or controlling here is without merit.  Defendants argue that businesses such as bookstores are probably entitled to some measure of Constitutional protection but are still closed.  This is distinct from Plaintiffs' position for several reasons: 1), they *are* eligible for state aid, and 2) you can still buy books over the internet.  An individual is still free to purchase a copy of George Orwell's 1984, and have it shipped to their home, but they cannot do the same with firearms.  So unless Defendants are prepared to allow Massachusetts residents to have firearms shipped to their homes, their argument is without merit.

## CONCLUSION

WHEREFORE, based on the foregoing, and other such arguments as may be advanced at time of hearing, Plaintiffs respectfully request that this Honorable Court issue a Temporary Restraining Order or Preliminary Injunction, preventing Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the challenged Order as it relates to Second

Amendment related businesses, or in any other way closing down any aspect of the Firearms Industry during the currently declared emergency.

Dated:  May 1, 2020

Respectfully submitted,
The Plaintiffs,
By their attorney,

/s/ *Andrew J. Couture*
Andrew J. Couture, Esq. BBO # 671193
Law Office of Andrew J. Couture
81 Merriam Avenue
Leominster, MA 01453
Tel: (978) 502-0221

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2020.

/s/   Andrew J. Couture

Andrew J. Couture