# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Michael McCarthy, et al., <br>     Plaintiffs <br><br> v. <br><br> Charles D. Baker, in his Official Capacity as Governor of the Commonwealth of Massachusetts, et al., <br>     Defendants | Civil Action No.: 4:20-cv-10701-DPW |
| Cedrone, LLC d/b/a Shawsheen Firearms, et al., <br>     Plaintiffs <br><br> v. <br><br> Charles Duane Baker, in his Capacity as Governor of the Commonwealth of Massachusetts, et al., <br>     Defendants | Civil Action No.: 4:20-cv-40041-DPW |

## CEDRONE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

NOW COME the Plaintiffs in the case of Cedrone, LLC d/b/a Shawsheen Firearms, et al., v. Charles Duane Baker, in his Capacity as Governor of the Commonwealth of Massachusetts, et al., who respectfully move this Honorable Court to deny the Defendants' Motion to Dismiss. As grounds therefore, Plaintiffs state as follows:

### I.    UNDISPUTED FACTS

1) On Monday, May 18th, 2020, the defendant, Charles Duane Baker, promulgated new regulations regarding business operations during the ongoing Covid-19 pandemic;

2) As part of these new regulations, firearms retailers and shooting ranges inside the Commonwealth were permitted to resume operations;

3) Following this, the Defendants filed a Motion to Dismiss alleging the case is now Moot.

## II.  DISPUTED FACTS

1) There still exists a live controversy requiring a judicial resolution.

## III.  ARGUMENT

### A. Standard of Review

#### a. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal for, "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Federal Rule of Civil Procedure 12(b)(1) offers the appropriate mechanism for challenging a court's subject-matter jurisdiction." *Areces Coma v. Oliva de Cuebas*, 356 F.Supp.3d 198, 202 (D.PR 2019) citing *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). This rule provides a, "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." Id. When a party moves to dismiss a claim which has been brought against it under this rule, the standard of review for such a claim is similar to that for Fed. R. Civ. P. 12(b)(6). "Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions." *Torres v. Bella Vista Hospital, Inc.*, 523 F.Supp.2d 123, 132 (D.PR 2007) citing *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994). Dismissal would be proper, "if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Torres v. Bella Vista Hospital, Inc.*, 523 F.Supp.2d 123, 132 (D.PR 2007) citing *Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 48 (1st Cir.2000). Dismissal would also be proper if, "the facts alleged reveal a jurisdictional defect not otherwise remediable." *Torres v. Bella Vista Hospital, Inc.*, 523 F.Supp.2d 123, 132 (D.PR 2007). In reviewing such a motion, the non-moving party is entitled to all reasonable inferences. "The district court must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Areces Coma v. Oliva de*

*Cuebas*, 356 F.Supp.3d 198, 202 (D.PR 2019) citing *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).  When this standard is applied to Defendant's motion, it becomes clear that dismissal at this time would be improper.

    b.  **Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal for, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss for failure to state a claim is appropriate, "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."  *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 446 (1st Cir. 2007) citing *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 52 (1st Cir.1990).  For a plaintiff's complaint to survive a motion to dismiss for failure to state a claim, the complaint cannot rely on labels and conclusions alone.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Rather, the plaintiff must clearly, "provide the "grounds" of his "entitlement to relief.""  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  For the plaintiff's complaint to meet this requirement, it must have facial plausibility which raises the probability of recovery above the merely speculative level.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A claim will have facial plausibility when, "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To meet this standard, the plaintiff must satisfy the standards set forth in *Twombly,* 550 U.S. 544.  While this standard does not require, "detailed factual allegations," it does require, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). When these standards are applied to the Plaintiffs' complaint, it becomes clear that granting the Defendants' motion to dismiss for failure to state a claim is improper.

**B. The Court Maintains Jurisdiction as the Plaintiffs' Claims Have Not Been Mooted**

    **a. The Case is Not Moot as it is a Wrong Capable of Repetition Yet Evading Review**

Defendants' contention that this Court now lacks Subject Matter Jurisdiction as Plaintiffs' claims are now moot and must be dismissed fails as Plaintiff's claims are not moot. For a moving party to succeed on a motion to dismiss for mootness, the moving party must show that there is no longer a live controversy, as Article III of the U.S. Constitution requires there be a live controversy at all stages. "Article III's "case-or-controversy requirement subsists through all stages of federal judicial proceedings.... [I]t is not enough that a dispute was very much alive when suit was filed." *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (2007) citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249 (1990). Rather instead, "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 983 (1998) citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–478, 110 S.Ct. 1249, 1254 (1990). When this standard is applied to Defendants' Motion to Dismiss and Plaintiffs' complaint, it becomes clear that dismissal is not proper at this time.

Dismissal is not proper because the case is not moot as the Plaintiffs' claims fall neatly within the recognized exception of wrongs capable of repetition yet evading review. This exception applies, "where the following two circumstances [are] simultaneously present: ' "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be

subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 988 (1998) citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249 (1990). Both circumstances are present here and so dismissal is improper.

The first prong of this test, the challenged action being too short in duration to be fully litigated prior to cessation or expiration, is satisfied as the contested orders which are the cause of the instant action have expired. This expiration happened barely two months into the litigation, and so there was never a possibility of it being fully litigated. Furthermore, Defendants' have admitted in their motion this is the case. *Defendants' Memo., pg. 10.* As such, the only remaining point of contention, is whether, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 988 (1998) citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249 (1990).

For a party opposing dismissal on the basis of mootness to satisfy the second prong, that party must show that, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (2007) citing *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978 (1998). Here, it is entirely reasonable for the Plaintiffs to expect that they would be subjected to the same kind of closures again, and so the case is not moot. The reason for this expectation being reasonable, is that no one is able to guarantee when, or if, the Covid-19 pandemic will abate, and as such this particular injury could recur.

It is no secret that the Covid-19 pandemic has quickly swept the globe and impacted all aspects of life, including inside the Commonwealth. Defendants' argue however, that because we have seen a steady decline in cases of Covid-19, that this case is now moot; it is not. It is not

moot as it has been recognized that a resurgence in the fall is possible.  It is not only possible, but given the mass gatherings which have been taking place due to the death of George Floyd, is increasingly likely each day.  "So, it is possible that this may dissipate somewhat in the summer months and come back again in the fall."[1]  Should the Defendants' motion be granted, and a resurgence occur, it is entirely possible, and indeed probable, that orders such as those being contested could be issued again.  It is probable, because as this Court has noted in prior hearings, the administration inside the Commonwealth is not even slightly friendly to the firearms community.  Given this combination, the likelihood of resurgence come fall and the administration's feelings towards the firearms community, "there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (2007) citing *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978 (1998).  Given that this is the case, Defendants' motion to dismiss must fail as Plaintiffs' case is not moot.

Defendants' argument that the case is now moot because of the loosening of restrictions carries no weight, as other countries which have loosened restrictions quickly saw a resurgence.[2]  Given this fact, and the fact that the Covid-19 pandemic began in China, it is entirely reasonable to believe that a similar outcome would occur here as well.  Should this happen, and the case is dismissed prior to being litigated on its' merits, Defendants' would remain free to again shutter the firearms retail industry in the Commonwealth, requiring Plaintiffs to file suit and begin this process again.  As this Court has previously pointed out, the administration is Massachusetts is

---

[1] *See* Preparing for possible seasonal return of COVID-19.  https://www.wdio.com/coronavirus/coronavirus-surge-fall-second-wave/5721451/
[2] *See* In South Korea And China, Loosening Restrictions Brings Coronavirus Resurgence. https://www.npr.org/sections/coronavirus-live-updates/2020/05/13/855117276/south-korea-and-china-see-covid-19-resurgence-after-easing-restrictions

not at all friendly to the firearms community, and this is not likely to change. As this is unlikely to change, a resurgence is likely, and Defendants' shuttered the retail firearms industry once, it is entirely reasonable to believe that in the absence of injunctive relief this form of injury would occur again. As such, dismissal is not proper at this time.

Finally, it is important to note that no one is certain how long this pandemic will last, or when any future spikes will occur. In fact, it is entirely possible this pandemic could last for a prolonged period, up to two years, with a resurgence in the fall.[3] As this is the case, it is entirely possible, and indeed reasonable to believe, that additional spikes in covid-19 cases could occur in the future. These spikes could very likely lead to the Defendants' taking further adverse action against the Plaintiffs of the sort which caused this case to be filed. Given the foregoing, there is a reasonable expectation that these Plaintiffs could be subjected to this same kind of injury again in the absence of a favorable court ruling. As such, dismissal of the Plaintiffs' complaint is not proper at this time.

**b. The Case is not Moot under Voluntary Cessation of Unlawful Activity**

Defendants' contention that Plaintiffs' claims are moot and this Court now lacks Subject Matter Jurisdiction fails as Plaintiffs' claims are not moot. Plaintiffs' claims are not moot, as the Defendants' voluntary cessation of their unlawful activity does not moot the case. The reason is that, "The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops,* 705 F.3d 44, 54 (1st Cir. 2013) citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278,

---

[3] *See* Coronavirus may last 2 years, study warns. And its second wave could be worse. https://www.usatoday.com/story/news/health/2020/05/01/coronavirus-wont-end-2-years-worse-second-wave-study-warns/3064708001/

284 n. 1, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001).  This is done so as to, "avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after."  Id at 54-55 citing Already, LLC v. Nike, Inc., ⎯⎯ U.S. ⎯⎯, ⎯⎯, 133 S.Ct. 721, 184 L.Ed.2d 553, 2013 WL 85300, No. 11–982, slip op. at 4 (U.S. Jan. 9, 2013).  This principal is well recognized in the United States; "It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 190, 120 S.Ct. 693, 709 (2000) citing *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283 102 S.Ct. 1070 (1982).  As the Defendants' conduct falls squarely into this recognized exception their motion to dismiss should be denied.

The Plaintiffs' case is not moot, as Defendants have failed to meet the heavy burden imposed under this particular exception.  "In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 170, 120 S.Ct. 693, 699 (2000) citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).  This means, "The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id.  This standard places the burden on the moving party to demonstrate that their unlawful conduct is not reasonably likely to recur.  The Defendants' however, have failed to meet this burden, and as such their motion should be denied.

The reason they have failed, is that they have not done anything other than say it is not reasonably likely they would resume their unlawful activity if the case were dismissed; this is simply not enough. Should there be another spike in Covid-19 cases, or any type of pandemic, the Defendants would be free to return to their old ways in the absence of a judicial resolution. Simply saying they might not resume their unlawful activity, or saying the Plaintiffs haven't demonstrated that they are reasonably likely to resume them is not enough; the burden is on the moving party to show this is unlikely, and that burden is a heavy one. "The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated. The burden is a heavy one." *U.S. v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897 (1953).

The Defendants here have done nothing to show there is no reasonable expectation that the wrong they committed will not be repeated; they have just said it might not happen again and that the Plaintiffs have not shown any likelihood that it would happen again. This is not enough as the case law shows. "Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." Id. The similarities between these two cases are great, and as such the outcomes should be as well. In the case of *U.S. v. W.T. Grant Co.*, the defendant simply ceased it's unlawful activity, promised not to do it again, and moved to dismiss the case on the basis of mootness. The defendant in *W.T. Grant Co.,* was unsuccessful because as the court said, "the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to

9

make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." Id.

The Defendants here have not even risen to this level of conduct in their attempt to have this case dismissed, and as such their motion should be denied. The Defendants merely stated that the challenged illegal activity has ceased and that the Plaintiffs have failed to show a reasonable likelihood that it will resume and so they should win. The Defendants have not even attempted to promise that they will not resume their unlawful conduct as the defendant in *W.T. Grant Co.* did, they simply stopped and tried to place the burden on the non-moving party. Furthermore, A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Here, appellant's repeal of the objectionable language would not preclude it from reenacting the same provision if the District Court's judgment were vacated." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 102 S.Ct. 1070, 1072 71 L.Ed.2d 152. In the case of *City of Mesquite*, the city enacted legislation which was challenged and found to be unconstitutional. Upon such legislation being struck down, the city changed the language and sought to have the case dismissed on the basis of mootness. The court there properly noted that while the live controversy had ceased to exist, the case should be litigated, as the city was free to return to its' old ways in the absence of a judicial decision. The similarity to the case at bar is striking. The Defendants engaged in a course of conduct which was illegal, ceased it voluntarily and now claim the case is moot because they were planning to stop all along; it is not. As the Defendants have not even made a bare showing that they would not resume their unlawful conduct if the case were dismissed and have not even come close to meeting the requisite burden, their motion should be denied.

**C. The defendants may be liable for damages in their personal capacity.**

State executive officials are not entitled to absolute immunity for their official actions. 42 U.S.C.A. § 1983. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State' ") (quoting *Graham,* 473 U.S., at 167, n. 14, 105 S.Ct., at 3106, n. 14). *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362–63, 116 L. Ed. 2d 301 (1991). *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), allows for an exception to Eleventh Amendment immunity where a state official may be sued for depriving another of their federal right under the color of state law. While the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." 416 U.S., at 238, 94 S.Ct., at 1687. That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983. *Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S. Ct. 358, 364, 116 L. Ed. 2d 301 (1991).

The Cedrone complaint does appear to assert only official capacity claims. However, paragraphs 72 and 77 of the Complaint requests damages based on both individual and official capacity claims. Cedrone Compl. ¶¶ 72, 77. This assertion manifests the intent to hold the defendants individually and personally liable. A mere scrivener's error in asserting individual

11

capacity in the caption of the case does not negate the intention of holding the defendants liable in their individual capacity where it was asserted when requesting damages.

**D. There is no qualified immunity when there was a violation of a constitutional issue and the unlawfulness of their conduct was clearly established at the time.**

Under the qualified immunity doctrine, government officials sued in their individual capacities "are immune from damages claims" unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019) (en banc) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Moreover, "the right that was allegedly violated must be defined 'in a particularized sense so that the contours of the right are clear to a reasonable official.'" *Castagna v. Jean*, 955 F.3d, 211 (quoting Eves, 927 F.3d at 583). Qualified immunity is intended to protect all but the plainly incompetent or those who knowingly violate the law. *Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019). Here, there is no qualified immunity where the constitutional violation was clear and the Second Amendment, right to purchase firearms, and ability of government officials to change or suspend constitutional rights was clearly established at the time of the violation.

**a. A law must be sufficiently clear at the time of the violation for the defendants to know that their actions were unlawful.**

To establish that unlawfulness of government official's conduct was clearly established at time of violation, as required to overcome qualified immunity, a plaintiff must demonstrate that the law was sufficiently clear such that every reasonable official would understand that what he is doing is unlawful. *Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019). Clearly established law, for purposes of qualified immunity inquiry, is not defined at high level of generality; rather, clearly

established law must define the right allegedly violated in a particularized sense so that the contours of the right are clear to a reasonable official. Id. For law to be clearly established for qualified immunity purposes, although there need not be a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. Id. Inquiry into whether public official is entitled to qualified immunity focuses on the objective legal reasonableness of an official's acts; evidence concerning the defendant's subjective intent is simply irrelevant to the second step of the inquiry in which court determines whether unlawfulness of the defendant's conduct was clearly established at the time of alleged violation. Id. If an objectively reasonable public official might not have known for certain that his conduct, which violated federal statutory or constitutional right, was unlawful, then public official is entitled to qualified immunity from liability. Id. The purpose of qualified immunity is to protect reasonable, if mistaken, decision making by government officials when the law is unclear. Id. A reasonable mistake of law does not defeat qualified immunity. Id.

  b. **The Second Amendment and supporting case law clearly establish that banning firearm sales is a Constitutional violation.**

The Second Amendment says that "the right of *the people* to keep and bear arms shall not be infringed." U.S. CONST. amend. II (emphasis added). And the Supreme Court has confirmed that this language confers an "*individual* right to possess and carry weapons." *Second Amendment Arms v. City of Chicago*, 135 F. Supp. 3d 743, 760 (N.D. Ill. 2015). The Second Amendment guarantees the individual right to possess and carry weapons in case of confrontation. U.S.C.A. Const.Amend. 2.

The Second Amendment right to keep and to bear arms includes the right to purchase and sell firearms. U.S.C.A. Const. Amend. 2. *Teixeira v. City. of Alameda*, 822 F.3d 1047 (9th Cir.

2016), on reh'g en banc, 873 F.3d 670 (9th Cir. 2017). After *Heller*, this court and other federal courts of appeals have held that the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense. Id. the core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms. Id.; *citing Jackson v. City and County of San Francisco,* 746 F.3d 953, 967 (9th Cir. 2014). In *U.S. v. Marzzarella,* 614 F.3d 85, the court rightly observed that in contemporary society, permitting an overall ban on gun sales "would be untenable under *Heller*," because a total prohibition would severely limit the ability of citizens to *acquire* firearms. *Teixeira*, 873 F.3d at 688.

   The Second Amendment was clearly established prior to April 28, 2020, when Governor Baker declared that gun stores were not essential and suspended the second amendment right to purchase firearms. The Second Amendment was even established on March 19, 2020, when the Federal Gov't promulgated their guidance on essential services, which the Commonwealth initially agreed with, but changed their mind barely three hours later.[4] The *Heller* Court, which is a Supreme Court decision, said that the Second Amendment protects the ancillary rights to possess a firearm, which includes the ability for people to purchase a firearm. This law is clear and was readily available to the defendants at the time they ordered that gun stores remain closed. Therefore, the law was sufficiently clear such that every reasonable official would understand that what he is doing is unlawful. Because it was clear that the order was an unlawful Constitutional violation, the defendants are not entitled to qualified immunity.

---

[4] *See* Guidance on the Essential Critical Infrastructure Workforce. https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce

**c. Defendants had clear knowledge that they were not allowed to violate Constitutional rights on the basis of an emergency.**

The Defendants were aware that their actions were unlawful. The Supreme Court stated in 1934 that an emergency does not grant power. "Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved." *Home Building Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231 (1934). Constitutions cannot be changed by events alone. *People ex rel. Twitchell v. Blodgett*, 13 Mich. 127, 139 (1865). They remain binding as the acts of the people in their sovereign capacity, as the framers of government, until they are amended or abrogated by the action prescribed by the authority which created them. Id. It is not competent for any department of the government to change a constitution, or declare it changed, simply because it appears ill adapted to a new state of things. Id.

Defendant Baker was further aware that he did not have the power to suspend Constitutional Rights before further declaring on April 28, 2020 that gun stores were not essential businesses. In an opinion written by the Suffolk Superior Court on April 16, 2020 (Salinger, J.) reminded the defendant that "Even during an emergency, the Governor does not have unreviewable authority and may not disobey constitutional constraints." *COMMCAN, INC., AND OTHERS v. CHARLIE BAKER, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF MASSACHUSETTS*, No. 2084CV00808-BLS2, 2020 WL 1903822, at *1 (Mass. Super. Apr. 16, 2020). The Governor, like the rest of the Executive Branch, "may not violate a person's constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory means of enforcing those rights." *Layne v. Superintendent, Massachusetts Correctional Institute, Cedar Junction*, 406 Mass. 156, 159–160 (1989).

Furthermore, the Superior Court reminded the defendants that the Civil Defense Act does not allow a Governor to take actions during a state of emergency that violate the constitutional rights of Massachusetts residents and businesses. *Commcan, Inc.*, and others, No. 2084CV00808-BLS2, 2020 WL 1903822, at *9 (Mass. Super. Apr. 16, 2020). The defendants were further reminded of these points in *ACA International v. Healey,* No. CV 20-10767-RGS, 2020 WL 2198366, at *6 (D. Mass. May 6, 2020), when the court stated that "As the Court noted at oral argument, constitutional rights do not take a holiday simply because governing authorities declare an emergency.".

Qualified immunity gives government officials immunity from lawsuit in their official capacity in cases where there was a violation of a constitutional right and the unlawfulness of their conduct was clearly established. *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019). Both requirements for the exception to immunity are established here, where there was a violation of Second Amendment Rights and the Second Amendment law was clearly established on April 28, 2020. Furthermore, there are decisions that clearly establish that a right to purchase a firearm is a Constitutional Right. There is also case law establishing how to change Constitutional rights, and that those rights were improperly suspended by the defendants. Qualified immunity is intended to protect all but the plainly incompetent and those that knowingly violate that law. Id. It is clear here that the defendants knowingly violated the law and are not entitled to qualified immunity, unless the defendants would like to assert that they are entitled to be protected under the other class of people that qualified immunity is intended for.

## CONCLUSION

WHEREFORE, based on the foregoing, and other such arguments as may be advanced at time of hearing, Plaintiffs respectfully request this Honorable Court deny Defendants' Motion to Dismiss and all other relief this Honorable Court deems just and proper.

Dated:  June 5, 2020

>
> Respectfully submitted,
> The Plaintiffs,
> By their attorney,
>
> /s/ *Andrew J. Couture*_____
> Andrew J. Couture, Esq. BBO # 671193
> Law Office of Andrew J. Couture
> 81 Merriam Avenue
> Leominster, MA 01453
> Tel: (978) 502-0221

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 5, 2020.

>  /s/   Andrew J. Couture
> Andrew J. Couture