# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Cedrone, LLC d/b/a Shawsheen Firearms, et al., | ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No.: 4:20-cv-40041-DPW |
| Charles Duane Baker, in his Capacity as Governor of the Commonwealth of Massachusetts, et al., | ) ) ) | |
| Defendants | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………………..i

Undisputed Facts………………………………………………………………..2

Disputed Facts………………………………………………………………..2

Argument………………………………………………………………………2

    A.  Summary Judgment Standard………………………………………………..2

    B.  The Court Maintains Jurisdiction as the Plaintiffs' Claims Have Not Been Mooted……..2

        i.  The Case is Not Moot as it is a Wrong Capable of
           Repetition Yet Evading Review…………………………………………………...2

        ii.  The Case is not Moot under Voluntary Cessation of
            Unlawful Activity…………………………………………………………7

    C.  Plaintiffs' State Law Claim and Request for Damages
       are not Barred by the Eleventh Amendment…………………………………………..10

    D.  The Orders Which Temporarily Closed Gun Retailers and Shooting
       Ranges Did Not Even Remotely Comport with the Second Amendment……………..12

    E.  The Plaintiffs' Procedural Due Process Claim Does Not Fail as a Matter of Law………13

    F.  The Claims for Damages Against the Defendants in their Individual Capacities
       are not Barred by Qualified Immunity…………………………………………………...16

        i.  A law must be sufficiently clear at the time of the violation for the defendants
           to know that their actions were unlawful………………………………...…16

        ii.  The Second Amendment and supporting case law clearly establish that banning
            firearm sales is a Constitutional violation……………………………………..17

        iii.  Defendants had clear knowledge that they were not allowed to violate
            Constitutional rights on the basis of an emergency……………………………...18

Conclusion………………………………………………………………….…20

# TABLE OF AUTHORITIES

**Cases**

*ACA International v. Healey*,
   No. CV 20-10767-RGS, 2020 WL 2198366, at *6 (D. Mass. May 6, 2020)…………...20

*Already, LLC v. Nike, Inc.*,
   ⸺ U.S. ⸺, ⸺, 133 S.Ct. 721, 184 L.Ed.2d 55. (U.S. Jan. 9, 2013)………………7

*American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*,
   705 F.3d 44 (1st Cir. 2013)…..………………………………………………………7

*Barry v. Barchi*,
   443 U.S. 55, 99 S.Ct. 2642 (1979)………………………………………………………14

*Castagna v. Jean*,
   955 F.3d 211 (2020)………………………………………………………………...16

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548 (1986)…………………………………………………..2

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 102 S.Ct. 1070 (1982)………………………………………………….8, 10

*City News & Novelty, Inc. v. City of Waukesha*,
   531 U.S. 278, 284 n. 1, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001)…………………………7

*CommCan, Inc., and Others v. Charlie Baker, in His Official Capacity as Governor of the Commonwealth of Massachusetts*,
   No. 2084CV00808-BLS2, 2020 WL 1903822, at *1 (Mass. Super. Apr. 16, 2020)……19

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)…..………………………………………………………*passim*

*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018)………………………………….………………………………16

*Ex parte Young*,
   209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)………..……………………………11

*Eves v. LePage*,
   927 F.3d 575 (1st Cir. 2019)………………………………….…………………………16, 20

*Ezell v. City of Chicago*,
   651 F.3d 684, 704 (7th Cir. 2011)…………………………………………………13

*Federal Election Com'n v. Wisconsin Right To Life, Inc.*,
   551 U.S. 449 127 S.Ct. 2652 (2007)……………………..…………………...…3, 4, 5

*Flesner v. Technical Communications Corp.*,
   410 Mass. 805 (1991)..…………………………………………………………………2

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U.S. 167, 120 S.Ct. 693 (2000)……………………………………….……7, 8

*Hafer v. Melo*,
   502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)……………………….....10, 11

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
   452 U.S. 264 (1981)………………………………………………...………………15

*Home Building Association v. Blaisdell*,
   290 U.S. 398, 54 S.Ct. 231 (1934)……………………………………………………19

*Jackson v. City and County of San Francisco*,
   746 F.3d 953, 967 (9th Cir. 2014)……………………………………………12, 18

*Kourouvacilis v. General Motors Corp.*,
   410 Mass. 706 (1991)……………………………………………………………..2

*Layne v. Superintendent, Massachusetts Correctional Institute, Cedar Junction*,
   406 Mass. 156 (1989)…………………………………...………………………………19

*Lewis v. Continental Bank Corp.*,
   494 U.S. 472, 110 S.Ct. 1249 (1990)……………………………………...……3, 4

*Monroe v. Pape*,
   365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)………………………………………11

*O'Brion, Russell & Co. v. LeMay*,
   370 Mass. 243, 346 N.E.2d 861 (1976)…...…………………………………………2

*People ex rel. Twitchell v. Blodgett*,
   13 Mich. 127, 139 (1865)…………………………………………………………..19

*Second Amendment Arms v. City of Chicago*,
   135 F. Supp. 3d 743 (N.D. Ill. 2015)………………………………………...…12, 17

*Spencer v. Kemna*,
   523 U.S. 1, 118 S.Ct. 978 (1998)…...……………………………………………...…3, 4, 5

*Teixeira v. City. Of Alameda*,
   822 F.3d 1047 (9th Cir. 2016), 873 F.3d 670 (9th Cir. 2017)….………..……12, 13, 17, 18

*United States v. Concentrated Phosphate Export Assn.*,
    393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)…..…..…………………………8

*U.S. v. Marzzarella*,
    614 F.3d 85 (2010)……………...…………………………………………………12, 18

*U.S. v. W. T. Grant Co.*,
    345 U.S. 629, 73 S.Ct. 894 (1953)…..………………………………………...9, 10
*Wesson v. Town of Salisbury*,
    13 F. Supp. 3d 171 (D. Mass.
2014)……………...……………………………...…13, 18

*World Gym, Inc. v. Baker*,
    --- F. Supp. 3d ---, 2020 WL 4274557 (D. Mass. July 24, 2020)…………………6, 14, 15

## Constitutional Provisions and Statutes

U.S. Const., Article III…………………………………………………………………3

U.S. Const. Amend.II……………………………………………………………*passim*

U.S. Const. Amend. XIV…………………………………………………………...14

42 U.S.C.A. § 1983……………………………………………………………..10, 11

## <u>PLAINTIFFS' MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

NOW COME the Plaintiffs in the case of Cedrone, LLC d/b/a Shawsheen Firearms, et al., v. Charles Duane Baker, in his Capacity as Governor of the Commonwealth of Massachusetts, et al., who respectfully move this Honorable Court to deny the Defendants' Motion for Summary Judgment. As grounds therefore, Plaintiffs state as follows:

## I.       <u>UNDISPUTED FACTS</u>

1)   On Monday, May 18th, 2020, the defendant, Charles Duane Baker, promulgated new regulations regarding business operations during the ongoing Covid-19 pandemic;

2)   As part of these new regulations, firearms retailers and shooting ranges inside the Commonwealth were permitted to resume operations;

3)   Following this, the Defendants filed a Motion to Dismiss alleging, inter alia, that the case is moot, and was also barred by the Eleventh Amendment as well as Qualified Immunity.

4)   These arguments were decided clearly against the Commonwealth, and rejected by this Honorable Court.

## II.       <u>DISPUTED FACTS</u>

1)   The Defendants have failed to meet the necessary burden for Summary Judgment and as such their motion should be denied.

2)   The Defendants Motion for Summary Judgment is nothing more than a rehashing of their prior Motion to Dismiss, and as such should be dismissed.

3)   There still exists a live controversy which prevents judgment based on Mootness.

4)   The Plaintiffs' State Law Claim and Request for Damages are not barred by the Eleventh Amendment.

5)   The Temporary Orders which closed gun retailers and shooting ranges did not comport with the Second Amendment.

6)   Plaintiffs are likely to succeed on their Procedural Due Process Claim.

1

7)  The Plaintiffs' claims against Defendants in their individual capacities are not barred by Qualified

Immunity.

## III.    ARGUMENT

### A.  Summary Judgment Standard

Summary judgment should be granted where there are no material facts in dispute and the

moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct.

2548 (1986); Fed. R. Civ. P. 56. The moving party bears the burden of affirmatively demonstrating the

absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. *Id.* Where

the party moving for summary judgment does not have the burden of proof at trial, this burden may be

met by either submitting affirmative evidence that negates an essential element of the opponent's case, or

by "demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner v. Technical*

*Communications Corp.,* 410 Mass. 805, 809 (1991); *Kourouvacilis v. General Motors Corp.* 410 Mass.

706, 716 (1991). "If the moving party establishes the absence of a triable issue, the party opposing the

motion must respond and allege specific facts which would establish the existence of a genuine issue of

material fact in order to defeat a motion for summary judgement." *O'Brion, Russell & Co. v. LeMay,* 370

Mass. 243, 245, 346 N.E.2d 861 (1976). When the Commonwealth's motion for Summary Judgment is

viewed in this light, it becomes clear that Summary Judgment is improper.

### B.  The Court Maintains Jurisdiction as the Plaintiffs' Claims Have Not Been Mooted

#### i.    The Case is Not Moot as it is a Wrong Capable of Repetition Yet Evading Review

Defendants' contention that this case is now moot and must be dismissed fails as Plaintiff's claims are

not moot. For a moving party to successfully have a case against it dismissed on the basis of mootness,

the moving party must show that there is no longer a live controversy, as Article III of the U.S.

Constitution requires there be a live controversy at all stages. "Article III's "case-or-controversy

requirement subsists through all stages of federal judicial proceedings.... [I]t is not enough that a dispute

was very much alive when suit was filed." *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551

U.S. 449, 462, 127 S.Ct. 2652, 2662 (2007) citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477,

110 S.Ct. 1249 (1990). Rather instead, "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 983 (1998) citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–478, 110 S.Ct. 1249, 1254 (1990). When this standard is applied to Defendants' Motion for Summary Judgement and Plaintiffs' complaint, it becomes clear that the defendants cannot carry their burden. Plaintiffs also incorporate by reference all points previously made in their opposition to defendants 12(b)6 motion previously filed.

Dismissal is not proper because the case is not moot as the Plaintiffs' claims fall neatly within the recognized exception of wrongs capable of repetition yet evading review. This exception applies, "where the following two circumstances [are] simultaneously present: ' "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 988 (1998) citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249 (1990). Both circumstances are present here and so summary judgment is improper.

The first prong of this test, the challenged action being too short in duration to be fully litigated prior to cessation or expiration, is satisfied. The reason it is satisfied, is that the contested orders which are the cause of the instant action have been rescinded, prior to full litigation, and the defendants admit this very fact. *Defendants' Memo., pg. 7.* As such, the only remaining point of contention, is whether, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 988 (1998) citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249 (1990). Here, there most certainly is a reasonable expectation that the same complaining party will be subject to the same action again, and so dismissal is not proper.

For a party opposing dismissal on the basis of mootness to satisfy the second prong, that party must show that, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (2007) citing *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978 (1998). Here, it is entirely

reasonable for the Plaintiffs to expect that they would be subjected to the same kind of closures again, and so the case is not moot. The reason for this expectation being reasonable, is that no one is able to guarantee when, or if, the Covid-19 pandemic will abate, and as such this particular injury could recur. Furthermore, the exact same people are in the exact same positions which they were in when the pandemic began. As such, it is entirely likely the same sort of anti-second amendment actions would be taken again should the amount of cases increase, as they are doing now.[1] Given these facts, it is entirely possible, and even probable, that should this case be dismissed, the exact same orders would be issued again, and the Plaintiffs forced to file another lawsuit to protect their rights.

It is no secret that the Covid-19 pandemic quickly swept the globe and impacted all aspects of life, including life inside the Commonwealth. Defendants' argue however, that because we have seen a steady decline in cases of Covid-19, that this case is now moot; it is not. It is not moot as the Commonwealth, and the entire country, is currently undergoing a resurgence, which will likely cause further massive shut downs. Should the Defendants' motion be granted, and the resurgence continue, it is entirely possible, and indeed probable, that orders such as those being contested could be issued again, as the exact same people are in the exact same positions and continue to hold the exact same prejudices. This is true because as this Court has noted in prior hearings, the administration inside the Commonwealth is not even slightly friendly to the firearms community. Given this combination, the likelihood of continuing resurgence as well as the administration's feelings towards the firearms community, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 2662 (2007) citing *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978 (1998). Given that this is the case, Defendants' motion for summary judgment must fail as Plaintiffs' case is not moot.

---

[1] https://www.wbur.org/commonhealth/2020/10/26/stress-anxiety-coronavirus-second-wave,
https://www.nbcboston.com/news/coronavirus/mass-confirms-1128-more-coronavirus-cases-8-new-deaths/2217649/

Defendants' argument that the case is now moot because of the loosening of restrictions carries no weight, as other countries which have loosened restrictions quickly saw a resurgence.[2]  Given this fact, and the fact that the Covid-19 pandemic began in China, it is entirely reasonable to believe that a similar outcome would occur here as well. Furthermore, the Commonwealth of Massachusetts has recently seen not only a resurgence, but also an increase in the amount of draconian, and likely unconstitutional, executive orders. On November 2, 2020, Defendant Baker issued a stay at home "advisory," which is advisory in name only.[3]  In reality, it is a compulsory curfew, which requires citizens to remain in their homes between ten p.m. and five a.m., unless they go out for a small number of enumerated and approved reasons. Such measures show that the defendants are not only willing, but eager, to trample the rights of the citizenry of Massachusetts.

In addition to the aforementioned curfew, the defendants have also promulgated overbroad, and questionably constitutional, regulations which show they are more than a little inclined to return to their old ways. Specifically, Defendant Baker promulgated orders 53, 54 and 55, each of which show that if this case is dismissed, the Second Amendment, and the rights of all citizens, would once again be under attack. Specifically, Order 53, shows that the defendants have no problem with attacking businesses in the Commonwealth, and will do so. Order 54, the most egregious of the orders, attacks the rights of individuals to gather inside their own homes, trampling their freedom of association. In so doing, the defendants have shown not only are they willing to return to their old ways if this case is dismissed, they are anxious to do so. Finally, Order 55 demonstrates the willingness to promulgate overbroad and pointless regulations, simply to appear as though the defendants are doing something. Specifically, this order requires the wearing of face masks, even when social distancing is possible.  This means that an individual could be one-hundred yards away from the closest person, well over six-feet, and still be required to wear a face mask.  Such regulations show that the defendants are willing to not only trample

---

[2] *See* In South Korea And China, Loosening Restrictions Brings Coronavirus Resurgence. https://www.npr.org/sections/coronavirus-live-updates/2020/05/13/855117276/south-korea-and-china-see-covid-19-resurgence-after-easing-restrictions

[3] https://www.mass.gov/news/stay-at-home-advisory

individual rights without a second thought, but are also willing to issue arbitrary orders just to be seen as doing something.  As such, it strains credulity to the breaking point, that should this case be dismissed, they wouldn't renew their attack upon the retail firearms industry, as well as the rights of all citizens, with a fever.  Therefore, their motion for Summary Judgment should be denied.

Not only are the defendants free to renew their attacks, they certainly would because the same people, with the same prejudices, are in the same positions as in the spring, and are facing a similar situation as before; rising cases of Covid, no vaccine and no better way to fight the virus than a shutdown of society in general. Furthermore, as this Court has previously pointed out, the administration in Massachusetts is not at all friendly to the firearms community, and this is not likely to change.  As this is unlikely to change, a resurgence is not just likely but is in fact occurring, and Defendants' shuttered the retail firearms industry once, it is entirely reasonable to believe that in the absence of injunctive relief this form of injury would occur again. As such, dismissal is not proper at this time.

Additionally, it should be noted that despite the defendants' fondest wishes, the holding of other courts in other parts of the country are of no help here. Defendants cite to a case in California in which the court held that once the contested orders were rescinded, the case was moot. This however is of no help here, as that ruling came down in June when the number of cases was on the decline, not on the rise as is occurring here. Furthermore, the defendants attempt to analogize to the case of *World Gym, Inc. v. Baker*, but again miss the mark. The reason they do, is that the plaintiffs here have clearly protected Constitutional rights in play, the right to keep and bear arms, while the plaintiffs in *World Gym, Inc. v. Baker*, did not. As a final point, it is important to address the fact that previously a request for injunctive relief was withdrawn as being moot. While this is true, it is not dispositive here, because of a unique set of circumstances which have occurred. At the time the request was withdrawn, that particular issue was moot. However, the remainder of the case has remained alive long enough that the mootness has essentially worn off. As such, the defendants' argument falls short of the mark, because of the monumental times in which we find ourselves.

Finally, it is important to note that no one is certain how long this pandemic will last, or when an effective vaccine or treatment will be available. It is entirely possible this pandemic could last for a prolonged period, up to two years, with a resurgence such as we are currently seeing.[4] As this is the case, it is entirely possible, and indeed reasonable to believe, that the current increase in covid-19 cases the Commonwealth is experiencing, would result in the same complained of behavior as before. Given the foregoing, there is a reasonable expectation that these Plaintiffs could be subjected to this same kind of injury again in the absence of a favorable court ruling. As such, the Defendants are not entitled to judgment as a matter of law.

### ii.    The Case is not Moot under Voluntary Cessation of Unlawful Activity

Defendants' contention that Plaintiffs' claims are moot and are thus entitled to Summary Judgment fails as Plaintiffs' claims are not moot. Plaintiffs' claims are not moot, as the Defendants' voluntary cessation of their unlawful activity does not moot the case. The reason is that, "The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops,* 705 F.3d 44, 54 (1st Cir. 2013) citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001).  This is done so as to, "avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Id* at 54-55 citing *Already, LLC v. Nike, Inc.*, ─── U.S. ───, ───, 133 S.Ct. 721, 184 L.Ed.2d 553, 2013 WL 85300, No. 11–982, slip op. at 4 (U.S. Jan. 9, 2013).  This principal is well recognized in the United States; "It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 190, 120 S.Ct. 693, 709 (2000) citing *City of Mesquite v. Aladdin's*

---

[4] *See* Coronavirus may last 2 years, study warns. And its second wave could be worse. https://www.usatoday.com/story/news/health/2020/05/01/coronavirus-wont-end-2-years-worse-second-wave-study-warns/3064708001/

*Castle, Inc.,* 455 U.S. 283 102 S.Ct. 1070 (1982). Here, the defendants blatantly engaged in illegal activity when they shuttered the firearms industry in Massachusetts, and the fact they stopped after being ordered to do so and promise not to again, does not prevent this Court from determining the legality of their actions. As the Defendants' conduct falls squarely into this recognized exception, they are not entitled to judgment as a matter of law.

The Plaintiffs' case is not moot, as Defendants have failed to meet the heavy burden imposed under this particular exception. "In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 170, 120 S.Ct. 693, 699 (2000) citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). This means, "The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id*. This standard places the burden on the moving party to demonstrate that their unlawful conduct is not reasonably likely to recur. The Defendants' however, have failed to meet this burden, because as previously mentioned, the same people are in the same positions, and continue to hold the same prejudices, all while facing the exact same situation as before.

The reason defendants have failed, is that they have not done anything other than say it is not reasonably likely they would resume their unlawful activity if the case were dismissed; this is simply not enough. There is currently a resurgence of Covid-19 cases, and in the absence of any order to the contrary the Defendants would be free to return to their old ways. Furthermore, as the defendants themselves admit, the virus is still being studied. *Defendants Memo., pg. 7.*  Simply saying they might not resume their unlawful activity, or saying the Plaintiffs haven't demonstrated that they are reasonably likely to resume them is not enough; the burden is on the moving party to show this is unlikely, and that burden is a heavy one. "The case may nevertheless be moot if the defendant can demonstrate that 'there is no

reasonable expectation that the wrong will be repeated. The burden is a heavy one." *U.S. v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897 (1953).

The Defendants here have done nothing to show there is no reasonable expectation that the wrong they committed will not be repeated; they have just said it might not happen again and that the Plaintiffs have not shown any likelihood that it would happen again. This is not enough as the case law shows. "Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." *Id.* The similarities between these two cases are great, and as such the outcomes should be as well. In the case of *U.S. v. W.T. Grant Co.*, the defendant simply ceased its unlawful activity, promised not to do it again, and moved to dismiss the case on the basis of mootness. The defendant in *W.T. Grant Co.,* was unsuccessful because as the court said, "the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." *Id.*

The Defendants here have not even risen to this level of conduct in their attempt to have this case dismissed, and as such their motion should be denied. The Defendants merely stated that the challenged illegal activity has ceased and that the Plaintiffs have failed to show a reasonable likelihood that it will resume and so they should win. The Defendants have not even attempted to promise that they will not resume their unlawful conduct as the defendant in *W.T. Grant Co.* did; they simply stopped and tried to place the burden on the non-moving party. Furthermore, the voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. "Here, appellant's repeal of the objectionable language would not preclude it from reenacting the same provision if the District Court's judgment were vacated." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 102 S.Ct. 1070, 1072 71 L.Ed.2d 152. In the case of *City of Mesquite*, the city enacted legislation which was challenged and found to be unconstitutional. Upon such legislation being struck down, the city changed

the language and sought to have the case dismissed on the basis of mootness. Despite this, the court properly noted that while the live controversy had ceased to exist, the case should be litigated, as the city was free to return to its' old ways in the absence of a judicial decision. The similarity to the case at bar is striking. The Defendants engaged in a course of conduct which was illegal, ceased it voluntarily and now claim the case is moot because they were planning to stop all along; it is not. As the Defendants have not even made a bare showing that they would not resume their unlawful conduct if the case were dismissed and have not even come close to meeting the requisite burden, their motion should be denied.

**C.  Plaintiffs' State Law Claim and Request for Damages are not Barred by the Eleventh Amendment**

Despite the protestations of the Defendants to the contrary, the Plaintiffs' state law claim and request for damages are not barred by the Eleventh Amendment. The reason for this, is that state executive officials are not entitled to absolute immunity for their official actions. 42 U.S.C.A. § 1983. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Accordingly, Congress authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State' ") (quoting *Graham,* 473 U.S., at 167, n. 14, 105 S.Ct., at 3106, n. 14). *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362–63, 116 L. Ed. 2d 301 (1991). *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), allows for an exception to Eleventh Amendment immunity where a state official may be sued for depriving another of their federal right under the color of state law. While the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." 416 U.S., at 238, 94 S.Ct., at 1687. That is, the Eleventh

Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983. *Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S. Ct. 358, 364, 116 L. Ed. 2d 301 (1991).

The Cedrone complaint does appear to assert only official capacity claims. However, paragraphs 72 and 77 of the Complaint request damages based on both individual and official capacity claims. Cedrone Compl. ¶¶ 72, 77. This assertion manifests the intent to hold the defendants individually and personally liable. A mere scrivener's error in asserting individual capacity in the caption of the case does not negate the intention of holding the defendants liable in their individual capacity where it was asserted when requesting damages. Therefore, the Defendants may be liable for damages in their personal capacity, and so are not entitled to judgment as a matter of law.

### D. The Orders Which Temporarily Closed Gun Retailers and Shooting Ranges Did Not Even Remotely Comport with the Second Amendment

The orders which shuttered the Commonwealth's retail firearm industry and shooting ranges did not even remotely comport with the Second Amendment, because "the right of *the people* to keep and bear arms shall not be infringed." *U.S. Const. Amend. II*. This clear, unambiguous and unequivocal language is quite clear and easy to understand. In addition, the Supreme Court has confirmed that this language confers an "*individual* right to possess and carry weapons." *Second Amendment Arms v. City of Chicago*, 135 F. Supp. 3d 743, 760 (N.D. Ill. 2015). The Second Amendment also guarantees the individual right to possess and carry weapons in case of confrontation. *U.S. Const. Amend. II*. Despite this clear and easy to understand language, the Defendants chose to violate the Second Amendment, and continue to insist that doing so was okay; it was not.

The Second Amendment right to keep and to bear arms also includes the right to purchase and sell firearms. *U.S. Const. Amend. II*, *Teixeira v. City of Alameda*, 822 F.3d 1047 (9th Cir. 2016), on reh'g en banc, 873 F.3d 670 (9th Cir. 2017). After *Heller*, this court and other federal courts of appeals have held that the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense. *Id*. The core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms. *Id.*; *citing Jackson v. City and County*

*of San Francisco,* 746 F.3d 953, 967 (9th Cir. 2014). Furthermore, in the case of *U.S. v. Marzzarella,* 614

F.3d 85, the court correctly observed that in contemporary society, permitting an overall ban on gun sales

to stand "would be untenable under under *Heller,*" because a total prohibition would severely limit the

ability of citizens to *acquire* firearms. *Teixeira*, 873 F.3d at 688. Finally, "The right to

possess firearms for protection implies a corresponding right to acquire and maintain proficiency in

their use; the core right wouldn't mean much without the training and practice that make it

effective." *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 178 (D. Mass. 2014) citing *Ezell v. City of*

*Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), *Jackson v. City & County of San Francisco*.

In addition to the foregoing, the Second Amendment was clearly established prior to April 28, 2020,

when Governor Baker declared that gun stores were not essential and suspended the second amendment

right to purchase firearms. The Second Amendment was even established on March 19, 2020, when the

Federal Gov't promulgated their guidance on essential services, which the Governor initially agreed with,

but then changed his mind barely three hours later.[5] The *Heller* Court also said that the Second

Amendment protects the ancillary rights to possess a firearm, which includes the ability for people to

purchase a firearm. This law is clear, and was readily available to the defendants at the time they ordered

that gun stores be closed and to remain closed indefinitely. Despite this fact, the Defendants chose to

charge ahead with their attack on the Second Amendment, and continue to persist with their head in the

sand approach with the continual insistence that what they did was acceptable. Given the foregoing, it is

clear that the orders which shuttered the gun stores and shooting ranges did not comport with the Second

Amendment and that the Defendants are not entitled to judgment as a matter of law.

**E.   The Plaintiffs' Procedural Due Process Claim Does Not Fail as a Matter of Law**

Even though the Plaintiffs' Procedural Due Process claim is an unusual one, that does not mean that it

fails as a matter of law. The reason for this, is that the contested orders stripped all Plaintiffs of

Constitutionally protected rights to one degree or another. The Plaintiff businesses were stripped of their

---

[5] *See* Guidance on the Essential Critical Infrastructure Workforce.  https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce

property rights in their licenses, which are protected by the due process clause of the Fourteenth Amendment. "It is clear that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause." *Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 2649 (1979). Furthermore, GOA's members and supporters, Plaintiff Michael Barosso and Doris Stewart, saw their Second Amendment rights abridged without due process, which also violates the Fourteenth Amendment. "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amen. XIV. Such conduct was, and continues to be, unlawful on its face, despite the Defendants' insistence to the otherwise. Therefore, they are not entitled to judgment as a matter of law.

Furthermore, the Defendants attempt to make much of the fact that neither of the individual plaintiffs has attempted to purchase to a firearm since this Court issued a preliminary injunction, but this argument misses the mark. The reason that this argument misses the mark, is that the injury was to the plaintiffs' right to purchase a firearm and train with it, and was not dependent on their purchasing a firearm as soon as the contested order was rescinded. If this were true, it would mean that the Plaintiffs would never be able to seek redress for the wrongs committed against them, because it would mean that the mootness exception of wrongs capable of repetition, yet evading review, would be abolished. This exception however has not been, despite the Defendants' wishes, and as such, Defendants are not entitled to judgment as a matter of law.

In addition to this, the Defendants claim that the holding in *World Gym, Inc. v. Baker*, --- F. Supp. 3d ---, 2020 WL 4274557 (D. Mass. July 24, 2020), is of help to them here; it is not. The reason this case is of no assistance to the Defendants, is because while the plaintiff there challenged the order which forced it shut as the Plaintiffs here did, different portions of the Constitution were implicated. In *World Gym*, the plaintiff was not suing to vindicate a Constitutionally protected right as were the Plaintiffs in *Cedrone*. While the Plaintiffs in *Cedrone* sympathize and agree with the plaintiff in *World Gym*, their situation is different. The reason their situation is different, is because the challenged orders flagrantly violated a

Constitutionally protected right, whereas they did not in *World Gym*. The Plaintiffs do concede that,

"Summary administrative action may be justified in emergency situations."  *Hodel v. Va. Surface Mining*

*& Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981). However, it is essential to note the presence of the word

MAY (emphasis added) in the foregoing sentence. While it may, at times, be justified, it certainly was not

here. The reason for that, is the challenged order arbitrarily stripped a large portion of the population of

their rights without due process, and that is not acceptable. Furthermore, it was nothing less than an attack

on the Second Amendment, which was noted by the Court in prior hearings, and so cannot be tolerated.

Therefore, the Defendants are not entitled to judgment as a matter of law.

Finally, the Defendants cite to cases around the country which rejected similar claims, but again miss

the mark. The reason the Defendants miss the mark, is two-fold. One, while summary administrative

action may be justified in certain situations, it was not justified here. And two, none of those cases are

controlling here and are thus of no assistance. While the Defendants are arguing that the Court here

should adopt a similar position, it should not. It should not, because those courts simply got it wrong.

They got it wrong, because those decisions were the product of decades of government overreach which

needs to be curbed, and the Court here has the opportunity to do just that. Therefore, the Defendants are

not entitled to judgment as a matter of law.

**F.  The Claims for Damages Against the Defendants in their Individual Capacities are not Barred by Qualified Immunity**

The reason the Plaintiffs' claims for damages against the Defendants in their individual capacities are

not barred by qualified immunity if quite simple; There is no qualified immunity when there was a

violation of a Constitutional issue and the unlawfulness of their conduct was clearly established at the

time. Under the qualified immunity doctrine, government officials sued in their individual capacities "are

immune from damages claims" unless "(1) they violated a federal statutory or constitutional right, and (2)

the unlawfulness of their conduct was clearly established at the time." *Eves v. LePage*, 927 F.3d 575, 582-

83 (1st Cir. 2019) (en banc) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

Moreover, "the right that was allegedly violated must be defined 'in a particularized sense so that the

contours of the right are clear to a reasonable official.'" *Castagna v. Jean*, 955 F.3d 211 (quoting Eves, 927 F.3d at 583). Qualified immunity is intended to protect all but the plainly incompetent or those who knowingly violate the law. *Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019). Here, there is no qualified immunity where the constitutional violation was clear and the Second Amendment, right to purchase firearms, and ability of government officials to change or suspend constitutional rights was clearly established at the time of the violation.

### i.    A law must be sufficiently clear at the time of the violation for the defendants to know that their actions were unlawful

To establish that unlawfulness of government official's conduct was clearly established at time of violation, as required to overcome qualified immunity, a plaintiff must demonstrate that the law was sufficiently clear such that every reasonable official would understand that what he is doing is unlawful. *Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019). Clearly established law, for purposes of qualified immunity inquiry, is not defined at high level of generality; rather, clearly established law must define the right allegedly violated in a particularized sense so that the contours of the right are clear to a reasonable official. *Id*. For law to be clearly established for qualified immunity purposes, although there need not be a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. *Id*. Inquiry into whether a public official is entitled to qualified immunity focuses on the objective legal reasonableness of an official's acts; evidence concerning the defendant's subjective intent is simply irrelevant to the second step of the inquiry in which the court determines whether unlawfulness of the defendant's conduct was clearly established at the time of alleged violation. *Id*. If an objectively reasonable public official might not have known for certain that his conduct, which violated federal statutory or constitutional right, was unlawful, then public official is entitled to qualified immunity from liability. *Id*. The purpose of qualified immunity is to protect reasonable, if mistaken, decision making by government officials when the law is unclear. *Id*. A reasonable mistake of law does not defeat qualified immunity. *Id*.

### ii.   The Second Amendment and supporting case law clearly establish that banning firearm sales is a Constitutional violation

The Second Amendment says that "the right of *the people* to keep and bear arms shall not be infringed." *U.S. Const. Amend. II*. Additionaly, the Supreme Court has confirmed that this language confers an "*individual* right to possess and carry weapons." *Second Amendment Arms v. City of Chicago*, 135 F. Supp. 3d 743, 760 (N.D. Ill. 2015). The Second Amendment guarantees the individual right to possess and carry weapons in case of confrontation. *U.S. Const. Amend. II.*

The Second Amendment right to keep and to bear arms includes the right to purchase and sell firearms. *U.S. Const. Amend. II.*, *Teixeira v. City. of Alameda*, 822 F.3d 1047 (9th Cir. 2016), on reh'g en banc, 873 F.3d 670 (9th Cir. 2017). After *Heller*, this court and other federal courts of appeals have held that the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense. *Id.* The core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms. Id.; *citing Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171 (D. Mass. 2014). In *U.S. v. Marzzarella,* 614 F.3d 85, the court rightly observed that in contemporary society, permitting an overall ban on gun sales "would be untenable under *Heller*," because a total prohibition would severely limit the ability of citizens to *acquire* firearms. *Teixeira*, 873 F.3d at 688.

The Second Amendment was clearly established prior to April 28, 2020, when Governor Baker declared that gun stores were not essential and suspended the second amendment right to purchase firearms. The Second Amendment was even established on March 19, 2020, when the Federal Gov't promulgated their guidance on essential services, which the Governor initially agreed with, but changed his mind barely three hours later.[6] The *Heller* Court said that the Second Amendment protects the ancillary rights to possess a firearm, which includes the ability for people to purchase a firearm. This law is clear and was readily available to the Defendants at the time they ordered that gun stores remain closed. Therefore, the law was sufficiently clear such that every reasonable official would understand that what

---

[6] *See* Guidance on the Essential Critical Infrastructure Workforce.  https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce

he is doing is unlawful. Because it was clear that the order was an unlawful Constitutional violation, the defendants are not entitled to qualified immunity and so should be denied judgment as a matter of law.

### iii. Defendants had clear knowledge that they were not allowed to violate Constitutional rights on the basis of an emergency

The Defendants were, or should have been, aware that their actions were unlawful. The Supreme Court stated in 1934 that an emergency does not grant power. "Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved." *Home Building Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231 (1934). Constitutions cannot be changed by events alone. *People ex rel. Twitchell v. Blodgett*, 13 Mich. 127, 139 (1865). They remain binding as the acts of the people in their sovereign capacity, as the framers of government, until they are amended or abrogated by the action prescribed by the authority which created them. *Id*. It is not competent for any department of the government to change a constitution, or declare it changed, simply because it appears ill adapted to a new state of things. *Id*.

Defendant Baker was further aware that he did not have the power to suspend Constitutional Rights before further declaring on April 28, 2020 that gun stores were not essential businesses. In an opinion written by the Suffolk Superior Court on April 16, 2020 (Salinger, J.) reminded the defendant that "Even during an emergency, the Governor does not have unreviewable authority and may not disobey constitutional constraints." *CommCan, Inc., and Others v. Charlie Baker, in His Official Capacity as Governor of the Commonwealth of Massachusetts*, No. 2084CV00808-BLS2, 2020 WL 1903822, at *1 (Mass. Super. Apr. 16, 2020). The Governor, like the rest of the Executive Branch, "may not violate a person's constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory means of enforcing those rights." *Layne v. Superintendent, Massachusetts Correctional Institute, Cedar Junction*, 406 Mass. 156, 159–160 (1989). Furthermore, the Superior Court reminded the defendants that the Civil Defense Act does not allow a Governor to take actions during a state of emergency that violate the constitutional rights of Massachusetts residents and businesses. *Commcan, Inc*., and others, No. 2084CV00808-BLS2, 2020 WL 1903822, at *9 (Mass. Super.

17

Apr. 16, 2020). The defendants were further reminded of these points in *ACA International v. Healey,* No. CV 20-10767-RGS, 2020 WL 2198366, at *6 (D. Mass. May 6, 2020), when the court stated that "As the Court noted at oral argument, constitutional rights do not take a holiday simply because governing authorities declare an emergency."

Qualified immunity gives government officials immunity from lawsuit in their official capacity in cases where there was a violation of a constitutional right and the unlawfulness of their conduct was clearly established. *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019). Both requirements for the exception to immunity are established here, where there was a violation of Second Amendment Rights and the Second Amendment law was clearly established on April 28, 2020. Furthermore, there are decisions that clearly establish that a right to purchase a firearm is a Constitutional Right. There is also case law establishing how to change Constitutional rights, and that those rights were improperly suspended by the defendants. Qualified immunity is intended to protect all but the plainly incompetent and those that knowingly violate that law. *Id.* It is clear here that the defendants knowingly violated the law and are not entitled to qualified immunity, unless the defendants would like to assert that they are entitled to be protected under the other class of people that qualified immunity is intended for.

### IV.   CONCLUSION

For the foregoing reasons the Plaintiffs have shown that there are material facts in dispute, that they are likely to prevail at trial and that the Defendants are not entitled to judgment as a matter of law.

*WHEREFORE*, based on the foregoing, the Plaintiffs respectfully request this Honorable Court deny Defendants' Motion for Summary Judgment and all other relief this Honorable Court deems just and proper.

Dated:  November 10, 2020

Respectfully submitted,
The Plaintiffs,
By their attorney,

/s/ *Andrew J. Couture*
Andrew J. Couture, Esq. BBO # 671193
Law Office of Andrew J. Couture
81 Merriam Avenue
Leominster, MA 01453
Tel: (978) 502-0221

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to

the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be

sent to those indicated as non-registered participants on November 10, 2020.

/s/    Andrew J. Couture
Andrew J. Couture

19